LOTTINGER, Judge.
This is a suit in tort by Thomas Lyles, Jr., the petitioner, against Aetna Casualty & Surety Company, Esaw Brown, General Building Maintenance Corporation, and Joe A. Rich, in solido, for damages resulting when the minor child of petitioner was struck by a vehicle driven by defendant Brown. Petitioner sues on his own behalf for medical expenses, and as administrator of the estate of his minor child for personal damages. The capacities of the various defendants are as follows: Joe A. Rich and/or General Building Maintenance Corporation was the employer of defendant Esaw Brown at the time of the accident, Esaw Brown was the driver of the vehicle which struck young Lyles, and Aetna Casualty & Surety Company was the liability insurance carrier on the vehicle then operated by Esaw Brown. The Lower Court held in favor of the defendants and dismissed the petitioner’s suit, and petitioner has taken this appeal.
The record reflects that the accident in question occurred on November 19, 1959 *543 at approximately 8:30 p. m. o’clock in the vicinity of the intersection of Terrace Street with South 16th Street in the City' of Baton Rouge, Louisiana. Terrace Street is a main thoroughfare running generally east and west through the southern portion of Baton Rouge. It is blacktopped and has a width of 27 feet. Terrace Street has no lines or markings separating the lanes of traffic, however, the testimony shows that the northern lane is generally occupied by parked vehicles, the center lane is used for westbound traffic, and the southern lane is used for eastbound traffic. Terrace Street forms a “T” intersection with South 16th Street, South 16th Street running in a northerly direction only' from Terrace Street. At the time of the accident, the weather was clear and dry. A street light was located at the northwest corner of the intersection in question, however, the evidence does not reflect the intensity of the said light.
The evidence indicates that prior to the time of the accident Mary Davidson had taken a friend, Bethel Miller, and her two foster children, Alan Lyles and Jessie Marie Lyles, to church in her car. Alan Lyles and Jessie Lyles are two of seven children of the petitioner herein, and they had been placed in the home of Mary Davidson for care due to their mother’s illness and financial difficulties. Upon returning from church, Mary Davidson drove her car in an easterly direction along Terrace Street, and turned left into South 16th Street, and brought her car to a stop and parked on the eastern side of South 16th Street, facing north, with its rear end situated the width of a sidewalk from the northern line of Terrace Street. Her purpose in parking in this location was to pick up a friend who lived on the south side of Terrace Street. Mary Davidson testified that she helped Alan and his sister, Jessie, across Terrace Street so that they might tell her friend that she was waiting. No traffic was approaching at this time, and, after crossing the children, Mary returned to her parked car and stood beside it in conversation with Bethel Miller. Mary testified that, some few moments later, she saw Alan on the south side of Terrace Street jumping up and down and, noticing that traffic was passing on Terrace Street yelled for him not to come across the street at that time. She testified that the next thing she knew the child had been hit by the Volkswagen truck driven by defendant, Esaw Brown, and the young boy was rolling along the street. The Volkswagen was brought to a halt, and Brown ran out and picked up the child, and he and Mary Davidson drove the child to the hospital in the Volkswagen.
Esaw Brown testified that shortly prior to the accident he was traveling in a westerly direction on Terrace Street. Brown was driving the Volkswagen, and he was riding, as his passenger, Maxie J. Mann, who testified by way of deposition. Brown stated that he was traveling at a speed of approximately 20 to 25 miles per hour in the center, or westbound lane of traffic, and had just passed a car parked on the right, or parking lane, when he was approached by a vehicle driven east in the south, or eastern bound lane, of Terrace Street. The approaching vehicle was burning its bright headlights and, although Brown signaled for “its dimmers” the driver of the approaching vehicle failed to dim his lights. Upon further approaching in an easterly direction, the oncoming car suddenly swerved into the westbound lane of traffic which was then occupied by the Volkswagen driven by Brown, thus causing Brown to cut to his right. Although Brown could not give the actual distance that the oncoming car cut into his lane of traffic, Brown did testify that the approaching car did occupy approximately two feet of the lane reserved for western bound traffic. Inasmuch as there were no lines or markings separating the various lanes, we could well imagine that it was hard for defendant Brown to accurately estimate what portion of his lane of traffic was actually occupied by the oncoming vehicle. Upon seeing the other car cut to its left Brown testified that he placed his foot on his brake, however he did *544 not actually apply his brake, and cut to the right so as to miss the approaching vehicle. Defendant Brown then testified “I seen the kid after the car that was approaching us had passed by. He came from behind this car, running, and I didn’t have the time to stop before I hit him.” Brown testified that the boy was already in his lane of traffic when he saw him, at which time he almost immediately struck the boy, the point of impact being in the front of the Volkswagen at a location opposite the driver’s right leg. Brown immediately applied his brakes and left skid marks for a distance of 28 feet. He testified that the brakes were applied at approximately the time of the impact. The boy came to rest at the northwest corner of the intersection.
The Lower Court held that there was no negligence shown on the part of the driver of the defendant vehicle, and that the only negligence shown was on the part of the foster mother of the child in permitting this young five year old boy, to cross a heavily traveled highway by himself. Of course, and it is admitted by all parties, that the boy could not be held guilty of contributory negligence because of his youth.
Little credence was given to the testimony of Mary Davidson by the Lower Court. Her testimony was lengthy and contradictory in many respects, and even the petitioner’s brief states that “her veracity can most charitably be characterized as dubious”. She did state, however, in a statement given to the insurance adjuster a short time after the accident, which is on file in the record, that “I saw Alan standing on the south curb of Terrace Street and I know the car which was going east did not hit the child but the little panel truck going west side swipped the child but did not run over him. The first thing I knew after seeing Alan on the curb was hearing a noise and seeing Alan sliding along the pavement in front of the truck and the truck was skidding his tires. The truck stopped with Alan laying in the road in front of the headlights. When I saw the truck and the baby they were in the middle of the street.” As regards the impact, Mary Davidson testified at the trial substantially in accordance with the above statement.
We certainly believe that the judgment of the Lower Court in failing to find Esaw Brown negligent is in accord with the evidence submitted in the record. Certainly Brown could not foresee a young child running across the street directly in his path of travel from behind the car which had just immediately passed him. Although the petitioner indicates that Brown should have stopped or slowed his vehicle substantially upon being “blinded” by the bright lights of the approaching vehicle, the evidence fails to show that Brown was as a matter of fact blinded by the approaching vehicle. Although the driver did not give Brown his dimmers, Brown testified that he had a clear vision directly ahead of his truck and that he was not blinded by the lights because he did not look directly at them. It is true that Brown did not see, nor could he have possibly seen the young child, until a split second before the impact, because the child was hidden from his view by the approaching vehicle. The evidence indicates, we think conclusively, that this young child started to run across the street directly behind the vehicle approaching Brown, and, therefore, Brown was unable to see the dangerous situation of the child until just a split second prior to the actual impact. Although the investigating officers placed the point of impact at a point six feet south of the north parallel line of Terrace Street, and six feet east of the west line of 16th Street, it is apparent from the eye witnesses that this was actually the position at which the child came to rest after the impact. Unfortunately, due to the injuries sustained by the child, the parties involved left the scene of the accident prior to the arrival of the police, and, after taking the child to the hospital, returned to the scene with the policemen so that they might make their investigation.
We agree with tile decision of the Lower Court to the effect that there was no neg *545 ligence whatsoever shown on the part of Esaw Brown resulting in the unfortunate accident. Certainly he could not have reasonably foreseen a five year old child running behind an on-coming vehicle into his path of travel at 8:30 o’clock P.M., on a heavily traveled thoroughfare.
For the reasons hereinabove assigned, the judgment of the Lower Court will be affirmed, all costs of this appeal to be paid by petitioner.
Judgment affirmed.