183 So.2d 57 (1966)
Steve A. CAMPO, Ind., etc., Plaintiff-Appellant,
v.
Dalton J. VAMPRAN et al., Defendant-Appellees.
No. 6528.
Court of Appeal of Louisiana, First Circuit.
January 24, 1966.
Rehearing Denied February 28, 1966.
Writ Refused April 15, 1966.
*58 Joseph F. Keogh, of Franklin & Keogh, Baton Rouge, for appellant.
F. W. Middleton, Jr., of Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for appellees.
Before ELLIS, LANDRY, REID, BAILES and F. S. ELLIS, JJ.
BAILES, Judge.
This litigation arises out of an accident that occurred on September 17, 1962, wherein the plaintiff's minor child, Antoinette Campo, age two years, eight months, was struck by a vehicle driven by one of the defendants, Dalton J. Vampran. The other defendant is Aetna Casualty and Surety Company, the liability insurer of Vampran.
The plaintiff and father of the little girl is Steve A. Campo, who sues in his individual capacity to recover hospital and medical expenses in the amount of $1815, and in his representative capacity as administrator of the estate of the minor daughter to recover general damages suffered by the said child in the sum of $32.500.
For a cause of action, the plaintiff alleges that as defendant, Vampran, was driving west (sic) in the 3400 block of Riley Street in the City of Baton Rouge, his automobile struck and severely injured Antoinette Campo as she was crossing Riley Street. Plaintiff avers that the sole and proximate cause of the accident and the resulting injuries to the little girl was the negligence of defendant, Vampran, which he itemized as follows:
(a) In failing to maintain and keep a proper lookout;
(b) In failing to keep his vehicle under proper control;
(c) In traveling at an excessive rate of speed under the prevailing circumstances and conditions;
(d) In failing to see that which he should have seen, or seeing, failing to heed the same; and
(e) In driving on a residential street in a neighborhood in which he knew small children were playing without exercising the degree of care imposed on him by law under such circumstances.
Antoinette's injuries included a fracture of the right femur, cerebral concussion and multiple abrasions and contusions.
The defendants, after making what is tantamount to a general denial of the plaintiff's allegations, further answered plaintiff's petition and pleaded that the accident resulted from the sudden running into the street by plaintiff's little daughter from between two parked automobiles immediately in front of defendant, Vampran's automobile and at so short a distance from his vehicle that the accident was inevitable in spite of the defendant's efforts to avoid same.
This accident occurred between the hours of eight and nine o'clock in the morning in the 3400 block of Riley Street in the City of Baton Rouge as defendant, Dalton J. Vampran, *59 was driving his late model vehicle in an easterly direction toward Plank Road. The weather was clear, the street was dry and visibility was excellent.
Riley Street is a one-way two block long street commencing on the west side of Plank Road. It is 34 feet wide with parking permitted on either side. All traffic must proceed east toward Plank Road. It is entirely a residential neighborhood. The dwellings consist, in the main, of identical one-story duplex or two unit apartment houses with each complex arranged in the shape of a "U". A house is located on each of the three sides of the figure with the open end toward the street. A front yard or lawn area occupies the recessed area. No off-street parking areas are provided. All vehicles of the residents of this area are parked in the street parallel to the curbs.
Photographs were taken by the Baton Rouge police department officers within about twenty minutes after the accident, and apparently before any of the vehicles in the locality had been moved. All participants in the accident were still present when the municipal police conducted the investigation.
When the accident occurred there were vehicles parked on either side of the street. At the place of the accident on the north side of the street a large Buick sedan was parked. About two car lengths ahead of it, a Chevrolet sedan was parked, and about one car length ahead of the Buick automobile a Chevrolet sedan was parked on the south or right side of the street. It was from in front of this Buick sedan that the little Campo child suddenly emerged into the street immediately ahead of the Vampran vehicle. In their investigation, the police determined that the child was struck in approximately the center of the street and knocked from six to eight feet to the right where she came to rest near the front wheel of the Chevrolet sedan that was parked on the south side of the street.
The record shows clearly and unmistakably the following facts. Immediately prior to the accident defendant, Vampran, left a friend's residence in the 3300 block of Riley Street, and was proceeding in an easterly direction toward Plank Road. At some time prior thereto, the injured child, Antionette, and her younger sibling crossed from the south side to the north side of Riley Street. There the two children had a short conversation with a Mrs. Rasch whereupon this lady and her young son, whom she was accompanying to kindergarten, proceeded west on the sidewalk situated contiguous to the north curb. By this time defendant, Vampran, was nearing the locus of the meeting just described between little Antionette and Mrs. Rasch. Upon Mrs. Rasch proceeding a short distance, Antionette turned and ran toward the south side of the street. As she emerged from between two automobiles parked on the north side of Riley Street the Vampran vehicle was in close proximity. From a reconstruction of the accident by the investigating officer of the Baton Rouge Police Department, it appears that the child was struck by the right side of the front bumper. She was found lying in the street about six to eight feet from the place where she made contact with the Vampran vehicle, which stopped about six feet forward or to the east of the place of contact.
Defendant Vampran testified that he had driven in this neighborhod before, that he was aware that there were children living in this area and that he had seen children playing in yards and on the lawns prior to arriving at the place where this accident occurred. He further testified that he did not see either of the Campo children on the north side of the street, because, as it developed, their position was hidden from his view by the presence of a parked vehicle (the Buick described supra), the one from in front of which little Antionette ran in crossing the street in front of defendant.
Mr. Vampran stated, and there is no evidence in the record whatever to refute or contradict him, that the child darted into the street, that he glimpsed her as she emerged from in front of an automobile, that instantly he put on his brakes as in emergency *60 and attempted to turn his vehicle to the left to pass behind her. He maintained throughout his testimony that he was driving no faster than twenty mph, that he was looking ahead as he drove along the street.
Nothing contained in the record in anyway contradicts or conflicts with this estimate of speed.
The plaintiff assigns two specifications of error on the part of the trial court in rejecting his demands. The first error assigned is that the trial court erred in failing to find negligence on the part of the defendant in the occurrence of the accident.
Plaintiff states that the courts of this state have repeatedly stated that a motorist is held to a "high degree of care in the operation of a motor vehicle on the streets and highways where children are assembled or walk." That this is particularly and emphatically true where the motorist has knowledge of the existence and presence of children playing in the immediate vicinity of the spot where the accident occurred.
Plaintiff cites the case of Stamps v. Henderson (1946) La.App., 25 So.2d 305; Walker v. Jarnevich (1958) La.App., 102 So.2d 770; Burnaman v. LaPrairie (1962) La.App., 140 So.2d 710; and Danna v. London Guarantee & Accident Company (1962) La.App., 147 So.2d 739, as authority for the above statement of law. From our examination of these cases we find that generally these cases do stand for the statement of law attributed to them. We further find that none of these cited cases are applicable to the facts of the instant case. In all of the cited cases, the driver of the offending vehicle was aware of the presence of and saw or should have seen the injured child and was correctly charged with the responsibility of taking precautionary steps to avoid injury and harm to the child. Not so in the instant case; Mr. Vampran did not know of the presence of the Campo child as his view was obscured by the parked car from in front of which the little tot ran. The fact that Mr. Vampran had seen other children playing in other yards and other lawns before reaching the locus of the accident could not serve as warning to him that a child would suddenly dash into the street from in front of a parked car at the curb.
Plaintiff argues that Vampran was negligent, and should be so held by this court, because he did not see the Campo child until it was in front of his automobile. We do not find this to be a fact from the testimony of Mr. Vampran. While he did state on several occasions that he did not see the child until it was right in front of him, we take this to be a manner of speaking. On a close examination of his testimony, it is found that he explains her appearance in front of him in the following manner:
Page 116 of the Transcript.
"Q. Now, where was she when you first saw her? When you first saw the child, do you recall where she was?
A. Not definitely, no, sir. I mean I don't know what certain car it was but she came outthey had a car parked facing the same way I was, and she darted out from in front of that car right in front of me.
Q. Did you see her as she was coming out from a position to the left of you or did you see her when she was in front of you, or exactly when did you see her? That is the thing I am trying to get at, Mr. Vampran.
A. Well, I caught a glimpse of her just when I was almost even with her, she come out running right in front of me, when she cleared right there (indicating).
Mr. Middleton: Cleared what?
A. That fender of that car into the street.
Q. Now, she was to your left or in front of you or to your right when you first saw her?
A. To my left on the north side."
*61 Plaintiff urges this court that the defendant driver was not maintaining a proper lookout demonstrated by the failure of Vampran to see the older Campo child cross the street immediately in front of little Antionette Campo. While plaintiff poses this contention as though it is an established fact that the older Campo child crossed Riley Street ahead of the child that was struck, we find this to be a disputed fact that this other Campo child, who incidentally was the younger, did not cross the street ahead of Antionette. No witness placed the second Campo child on the south side of the street prior to the accident except Mrs. Willie Faye Rasch. She did not see the child traverse the street ahead of Antionette, but she did state that the child was on the south side after the accident. On the other hand, Mr. Vampran testified that he saw the child come into the street after the accident from the north side, that this child came into the street from the same place that Antionette had come. These are the only two witnesses that saw the other Campo child. The last place this child was that is ascertainable is on the left or north side of Riley Street.
Further, plaintiff contends that as Mrs. Rasch testified that she heard two distinct screeches of the brakes on the Vampran vehicle that it logically follows that Vampran put his brakes on the first time to let the first little child pass in front of him, and the second screech was indicative of his seeing the second child.
We find that this reasoning is fallacious in the light of the other testimony and the physical facts surrounding the occurrence of the accident. On considering the testimony of Mr. Vampran quoted supra describing how the child darted into the street immediately ahead of him, that he put his brakes on as in emergency, the testimony of the investigating officer of the Baton Rouge police force discussed supra, the fact that this little child was found lying on the street about eight feet from the point of contact with the vehicle, and the fact that the Vampran vehicle stopped approximately six feet east of the point of contact, we doubt seriously that enough time or distance elapsed for Mr. Vampran to have made two distinct efforts to stop. Furthermore, this point in the light of our findings of facts is much too nebulous on which to adjudge liability. Justice cannot be reliably arrived at through speculation as to what occurred.
On our careful scrutiny of the testimony of the factual witnesses, we find affirmatively that Mr. Vampran was not negligent in the operation of his automobile. He was operating his vehicle in a careful and prudent manner, proceeding not in excess of 20 mph on this wide street, keeping a proper and careful lookout ahead, with no prior warning or notice that this little child of less than three years of age was on the sidewalk as his view of her was obscured by the height and size of the Buick automobile from in front of which she made her entrance into the street. We find that there was nothing Mr. Vampran could have done to avert or avoid the accident that he did not do or try to do.
The duty to exercise greater than ordinary care to avoid injury to a child does not become operative or exist in favor of such child until his presence is known or should have been known under the existing facts of the particular case to the operator or driver of a motor vehicle. The motorist, upon discovering the presence of children in his path of travel or in a position where they could become imperiled, is under a duty to exercise the highest degree of care to avoid injury to them. Each case must be adjudged on the facts peculiar to it. No one case is absolutely controlling of another, as few cases are identical factually. See: Lyles v. Aetna Casualty & Surety Co. et al. (1961) La.App., 136 So.2d 542; Seale v. Checker Cab Company (1962) La.App., 137 So.2d 478; Smith v. Toye Brothers Yellow Cab Co. (1962) La.App., 142 So.2d 59; and *62 Schuster v. Audubon Insurance Co. (1962) La.App., 147 So.2d 226.
We find that the judgment of the trial court is correct and, accordingly, for the foregoing reasons is affirmed.
Affirmed.