215 So.2d 908 (1968)
John F. DURASO et al., Plaintiffs-Appellees,
v.
Willie A. BARBO et al., Defendants-Appellants.
No. 7463.
Court of Appeal of Louisiana, First Circuit.
November 12, 1968.
Rehearing Denied December 16, 1968.
Writ Refused January 24, 1969.
*909 Leo Gold, of Gold, Hall & Skye, Alexandria, for appellants.
G. T. Owen, Jr., of Dale, Owen, Richardson, Taylor & Mathews, Baton Rouge, for appellees.
Before LANDRY, REID and SARTAIN, JJ.
SARTAIN, Judge.
This suit was instituted by plaintiffs-appellees for the alleged wrongful death of their young daughter, Brenda Duraso, age 3 years and eleven months. The child was struck by a Chevrolet pickup truck on May 6, 1966 on Dixie Street in Natchitoches, Louisiana. The truck was owned by J. Adolph Berry, d/b/a Berry's Electric, driven by his employee, Willie A. Barbo and insured by Connecticut Fire Insurance Company, all of whom were joined as defendants.
Plaintiffs alleged, inter alia, that Barbo while driving through a residential area was traveling at an excessive rate of speed under the circumstances, that he failed to have his vehicle under proper control, that he failed to keep a proper lookout for pedestrians and particularly children and that he failed to see what he should have seen. Plaintiffs also plead the applicability of the doctrine of last clear chance.
Defendants answered contending that the fatal accident occurred when the child darted from behind a parked vehicle directly into the path of Barbo giving him no opportunity to avoid the accident. In the alternative defendants plead contributory negligence on the part of plaintiffs in that they knowingly permitted their small child to play in an area near a heavily traveled thoroughfare.
The trial court found for plaintiffs from which judgment defendants appeal.
The principal factual dispute between the parties concerns the location of a point on the west side of Dixie Street from which the child departed in an effort to cross the street. Plaintiffs contend that the child attempted to cross Dixie Street from a point near a footbridge which is located some 23 feet south of a Ford automobile later identified and hereinafter referred to as the Conders vehicle. Therefore plaintiffs urge that Barbo either saw or should have seen the child in sufficient time to avoid striking her. Defendants contend that the child left a position of safety on *910 the west side of Dixie Street immediately behind the Conders car and moved directly into the path of the pickup truck affording Barbo no opportunity to avoid the accident.
The trial judge held that the child attempted to cross the street from the vicinity of the footbridge and that Barbo should have seen her in time to take proper action to avoid the accident. The judge a quo further held that Barbo was driving at an excessive rate of speed under the circumstances and particularly through a residential area in which he knew of the possible presence of children. For reasons hereinafter stated we are of the opinion and must hold that the trial judge committed manifest error in reaching both of the above mentioned conclusions.
The two principal witnesses were Willie A. Barbo, the driver of the pickup truck, and Eugene Cedars who lived directly across the street from the aforementioned footbridge and parked vehicle.
Mr. Cedars, appearing for plaintiffs, testified that he was going home for lunch and approached his home by traveling west on Pavie Street which "T" intersects with Dixie Street. His home is on the northeast corner of this intersection. He stated that he turned to his right and parked his car on the east side of Dixie Street in front of his home. He estimated that the front end of his car was about five feet south of the rear of the Conders vehicle which was just across the street. The witness stated that he observed Barbo's truck as it approached from a distance of 200 feet. He got out of his vehicle and because of the approaching truck he shut his door and stood close to the left side of his car in order to permit Barbo to pass. He explained that as the rear of the truck passed him he heard a noise and turned to see what occurred. The noise that attracted his attention was the impact between the truck and the child. Cedars stated that he first ran to his home to tell his wife that a child had been hit and then returned to the child. In the time that it took Cedars to return Barbo was out of his truck and leaning over the child who was lying near the east edge of the pavement. Cedars stated that he did not see the Duraso child at any time prior to the impact and that he particularly did not see the child behind the Conders vehicle.
Barbo testified that he was proceeding south on Dixie Street "about 25 or 30" miles per hour, that he observed the Conders vehicle parked on the west side of Dixie Street facing north and the Cedars vehicle which was parked on the east side of Dixie Street and also facing north. Barbo stated that he saw Cedars get out of his car and walk into his home. With respect to the accident itself Barbo testified that as he approached the rear of the Conders vehicle he observed the top of the child's head as she ran from behind the Conders vehicle and into the path of his truck. He applied his brakes immediately "but it was too late". He explained further "It happened so fast, there wasn't enough time for me to actually make my brakes grab, because it happened just like that, just within the mark of a second."
There is serious conflict between the testimony of Cedars and Barbo with respect to the position of Cedars at the time the child was struck, Cedars stating that he was standing right beside his own vehicle and Barbo claiming he saw Cedars walking into his home. The police officer who investigated the accident was not called to testify by either party; however, his report was admitted into evidence without objection and tends to corroborate the testimony of Barbo.
This conflict does not alter the conclusion reached by us because we are firmly of the opinion that it made little if any difference whether the child darted immediately from the rear of the Conders vehicle or from the footbridge because in either event Barbo was left with no opportunity to avoid the accident. Assuming arguendo the same conclusion as the trial judge that the child left the west side of Dixie Street *911 from the vicinity of the footbridge, we arrive at a different legal conclusion.
In arriving at our decision, we must bear in mind the rule that an automobile driver is not an insurer of the safety of small children. When he is driving at a lawful and reasonable rate of speed and is obeying the rules of the road as to a proper lookout, he will not be held liable where a child suddenly darts or runs into his path from a concealed position in such a manner that the motorist is unable to avoid striking the child. Each case must be judged on the particular circumstances involved. See Wilson v. Aetna Casualty & Surety Co., La.App., 180 So.2d 218; Davis v. Guillot, La.App., 203 So.2d 919; Basham v. Ohio Casualty, La.App., 106 So.2d 129. The rule is different, however, when the motorist sees or should have seen the child near the street. For there a motorist is charged with knowledge that children playing or walking along the street may unexpectedly or unpredictably leave a position of safety for one of danger and peril. Under these circumstances a motorist is held to a high degree of care, or better said, the highest degree of care. See Helgason v. Hartford Insurance Co., La.App., 187 So.2d 140; Ward v. Southern Bell Tel. & Tel. Co., La.App., 189 So.2d 750; McBride v. Raidt, La.App., 206 So.2d 299; Vander v. New York Fire & Marine Underwriters, Inc., La.App., 192 So.2d 635. But as stated by us in Campo v. Vampran, La.App., 183 So.2d 57, 61:
"The duty to exercise greater than ordinary care to avoid injury to a child does not become operative or exist in favor of such child until his presence is known or should have been known under the existing facts of the particular case to the operator or driver of a motor vehicle. The motorist, upon discovering the presence of children in his path of travel or in a position where they could become imperiled, is under a duty to exercise the highest degree of care to avoid injury to them. Each case must be adjudged on the facts peculiar to it. No one case is absolutely controlling of another, as few cases are identical factually. See: Lyles v. Aetna Casualty & Surety Co. et al. (1961) La.App., 136 So.2d 542; Seale v. Checker Cab Company (1962) La.App., 137 So.2d 478; Smith v. Toye Brothers Yellow Cab Co. (1962) La.App., 142 So.2d 59; and Schuster v. Audubon Insurance Co. (1962) La.App., 147 So.2d 226."
The investigating officer was unable to locate the exact point of impact; however, the other pertinent conditions, facts and measurements which must be considered in the light of the aforementioned legal principles are readily ascertainable from the record.
Dixie Street is constructed of asphalt and has no curbs. It is bordered by narrow shoulders. Each shoulder is paralleled by a narrow ditch.
Within a distance of 35 feet along each side of Dixie Street are found the following: beginning on the west side (Barbo's right) is the rear end of Conders vehicle which was parked at a slight angle with its rear half on the asphalt; two feet south of the rear of this vehicle is the north edge of a ten foot private driveway; eleven feet south of the south edge of the private driveway is a small footbridge; twelve feet south of the footbridge commences the skid marks left by the right rear wheel of Barbo's truck. Now, going to the east side of Dixie Street (Barbo's left), we begin at a point even with the rear of Conders vehicle and go seven and one-half feet to the north edge of Cedars driveway; the driveway is twelve feet wide; from the south edge of Cedars driveway there is fifteen feet to the point even with the start of Barbo's skid marks. To this must be added Cedars vehicle which was parked on the east side of Dixie Street with its front end five feet south of the rear end of Conders car.
It is not disputed that at the moment of impact, Barbo's truck was in the center of the street. He had to be because of the *912 Cedars and Conders vehicles. It is also evident that the front center of the truck struck the child. This would place the child in the center of the street at the moment of impact.
Shortly after the accident the child's shoes were found near a water faucet which is located just west of the footbridge. Small foot prints, though not positively identified as those of the child, were found on the western shoulder between the footbridge and Dixie Street. These facts coupled with the testimony of Mr. Cedars that he did not observe the child on the private driveway behind the Conders vehicle constituted the basis for the trial judge's determination that the child actually attempted to cross Dixie Street from a point near the footbridge as urged by plaintiffs.
If this be true we nevertheless cannot agree that Barbo was negligent. The footbridge is just 22 to 23 feet south of the Conders vehicle. The presence of the child standing near the footbridge was hidden from Barbo, approaching from the north, until he had gotten about even with the Cedars car. The sudden appearance of this child could well have appeared to Barbo to have been closer to the parked vehicle than it really was but again we are only talking about the distance of two car lengths. The only evasive action left to Barbo was to stop his truck. He couldn't turn to his left because of the Cedars car.
It must also be remembered that the presence of Brenda Duraso was not even observed by Cedars as he approached his home from Pavie Street, took a right turn and traveled some 40 to 50 feet when he parked his car on the east side of Dixie Street. The footbridge is between the intersection of Pavie Street and the point where Cedars parked his car. It should have taken Cedars only a few seconds to make this maneuver and yet Cedars did not observe the child. We must conclude from this that the child was not at the edge of Dixie Street or she would have been seen by Cedars when he passed. If Cedars was standing by his car as he stated this would put him as near to the child as was Barbo when Barbo reached the rear of the Conders vehicle.
The trial judge stated "This Court is of the opinion that Mr. Barbo, who knew Mr. Cedars, took his eyes from the street and observed Mr. Cedars, at which time the child was crossing Dixie Street some 30 feet past the point where the gray Ford was parked." The record and the photographs clearly show that the footbridge was a maximum of 23 feet from the rear of the parked vehicle. It would not be imprudent or negligent for Barbo to observe Cedars for the few moments as indicated by the trial judge. As a matter of fact if Cedars was there it behooved Barbo to ascertain that Cedars would remain standing by his vehicle in a position of safety.
We are compelled to mention here the question of Barbo's speed at the time of the accident. This record does not indicate that he was traveling at a fast or reckless rate of speed under the circumstances. The stated speed limit was 25 miles per hour. Barbo stated that he was going "about 25 or 30". Cedars testified concerning Barbo's speed "I wouldn't say a real hard speed, but he was coming at a reasonable speed * * *". He further said, "I would say he was making about 30 or a little better. That's * * * but he slacked down a little. I don't know just how much, but it's hard to tell but that's my opinion of it." Assuming by Barbo's own admission that he was going 30 miles per hour, five in excess of the stated speed limit, and considering all of the aforementioned facts, we do not consider that Barbo's speed was a contributing factor.
For the above and foregoing reasons the judgment of the district court in favor of the plaintiffs is reversed and set aside and judgment is rendered herein in favor of the defendants, dismissing plaintiffs' suit at plaintiffs' cost.
Judgment reversed and rendered.