232 So.2d 578 (1970)
Lizzie WOODS, Individually, etc., Plaintiff-Appellee,
v.
Dominic C. CAPPO and Allstate Insurance Company, Defendants-Appellants.
No. 7901.
Court of Appeal of Louisiana, First Circuit.
March 9, 1970.
*579 Franklin, Moore, Beychok & Cooper, by James E. Moore, Baton Rouge, for defendants-appellants.
Hebert, Moss & Graphia, by Anthony J. Graphia, Baton Rouge, for plaintiff-appellee.
Before LANDRY, SARTAIN and ELLIS, JJ.
SARTAIN, Judge.
Allen Woods, age 10, was injured when struck by an automobile owned and operated by the defendant, Dominic C. Cappo. The trial judge held that Mr. Cappo was negligent in that he failed to exercise the high duty of care required of a motorist when that motorist sees or should have seen a child on or about a major thoroughfare. Judgment was rendered in favor of plaintiff, Lizzie Woods, individually in the amount of $320.18 for special damages and in her representative capacity as administratrix of the estate of her minor child the sum of $2,500 for personal injuries sustained by the latter.
Defendant has appealed contending the trial judge erred in holding that his actions under the circumstances of this case constituted negligence and, in the alternative, for his failure to hold that young Woods was guilty of contributory negligence. Plaintiff has answered the appeal asking that the award of $2,500 be increased to the sum of $3,500.
We are of the opinion that the decision of the trial judge is correct both as to liability and quantum and the judgment appealed from should be affirmed.
The accident giving rise to this litigation occurred in the 3700 block of North Street in the City of Baton Rouge on June 24, 1967. At this point, North Street is a concrete improved thoroughfare and runs in an east-west direction, with two ten foot lanes for each direction of traffic, separated by a yellow painted median which is two feet in width. The accident occurred *580 at approximately 9:30 P.M. o'clock. The weather was clear, the street was dry and artificially illuminated. Young Allen Woods and a companion, Nathaniel Robinson, were in the process of crossing North Street from north to south. Defendant was traveling east in the outside lane at a speed estimated between 20 to 25 miles per hour.
Under cross examination Mr. Cappo initially testified that when he first observed the young boys crossing the street, they were in the outside lane for westbound traffic, "they were walking, a slow walk, going south". He then stated that he did not observe them again until Woods ran into the left side of his car. He said that at the time he first observed the boys they appeared to be "horseplaying" with their backs turned in his (Cappo's) direction. Later Mr. Cappo testified that when he observed the boys they were just stepping off of the north curb of North Street. At this point he blew his horn and the boys then stopped on the yellow painted median. He explained that when he was 10 to 15 feet from them, young Woods suddenly attempted to complete his crossing at which time he ran into the left side of defendant's vehicle at a point located near the front door hinges.
Mrs. Cappo testified that as her husband was proceeding east on North Street, she observed the two young boys standing on the north side of North Street. As they commenced to cross the street, her husband sounded his horn whereupon both youths responded by stopping on the median. She also stated that as her husband's vehicle neared their position, young Woods broke into a run and ran into the left side of her husband's automobile. She also was of the opinion that the youths were "cutting up" or hitting at each other.
Allen Woods testified that he and his young friend were in the process of crossing North Street to go to a grocery store located on the south side. After waiting for some westbound cars to pass, they stepped into the street and had gotten to the yellow median where they stopped. He frankly admitted that he had looked to his left (east) and not to his right (west) before continuing on across. He remembers his companion calling to him but at the same moment he says he was struck by the Cappo vehicle. Young Woods claims that he was hit by the right front portion of defendant's automobile and that the point of impact was approximately three feet north of the south parallel line of North Street.
Nathaniel Robinson, age 11 at the time of the accident, corroborates Allen's testimony to the extent that they watched for westbound traffic, then crossed two lanes of North Street for such traffic and stopped on the yellow median. It was at this point that Woods "broke and ran" across the two lanes for eastbound traffic. Young Robinson was of the opinion that it was the left front fender and bumper of the Cappo vehicle that came into contact with Allen Woods.
Benjamin Burns was using a public telephone located in front of Joe Roselawn's grocery store on the south side of North Street at the time of the accident. He testified that Woods and Robinson were standing on the corner of North and 38th Streets when they started walking towards his direction. He did not observe the approach of the Cappo vehicle until it had collided with the Woods child. This witness stated that young Woods was struck by the right front fender of the Cappo vehicle "four or five feet from the edge of North Street". He did not recall hearing a horn signal from the Cappo vehicle. His testimony differs from that of the two young boys and Mr. and Mrs. Cappo in that this witness did not notice that the boys had stopped in the center of the street.
The trial judge found as a matter of fact that the two youths were originally on the north side of North Street and commenced to cross it on a slight diagonal. At the time they were observed on *581 the yellow median their backs were partially turned to eastbound traffic. The trial judge further found that there was some "horseplay" on the part of the youths which was noticeable to Mr. Cappo. He concluded that Mr. Cappo was negligent in that he erroneously assumed that the young boys would remain in a position of safety on the yellow median. The trial judge found also that there was nothing to block the view of Mr. Cappo and prevent his seeing the young boys as they stepped from the north curb, as they crossed the westbound lanes, or as they were standing on the yellow median. He, therefore, determined that Mr. Cappo's failure to have his vehicle under such control as to enable him to respond immediately to any impulsive action on the part of either one or both of the youths was a breach of duty constituting negligence which was the sole and proximate cause of the accident. He rightfully concluded that the doctrine of last clear chance was not applicable.
Our jurisprudence is very clear to the effect that an extraordinarily high degree of care is imposed on a motorist when he discovers the presence of children in his path of travel or in a position where they could become imperiled. Doyle v. Nelson, 11 So.2d 645 (2d La.App., 1942); Stamps v. Henderson, 25 So.2d 305 (2d La.App., 1946); Haywood v. Fidelity Mutual Ins. Co. of Indianapolis, Ind., 47 So.2d 59 (1st La.App., 1950); Ates v. State Farm Mutual Automobile Ins. Co., 191 So.2d 332 (3d La. App., 1966); Reynolds v. Transamerica Ins. Co., 221 So.2d 889 (1st La.App., 1969); Pea v. Smith, 224 So.2d 37 (1st La.App., 1969).
Defendants urge that a driver is not the insurer of the safety of small children and cite Duraso v. Barbo, 215 So.2d 908 (1st La.App., 1968, writ refused 1969) and Collins v. Allstate Ins. Co., 215 So.2d 546 (1st La.App., 1968). These cases are authority for such a rule. However, an examination of the Duraso and Collins cases and the authorities therein cited are limited to those situations where a child suddenly appears from a hidden position and darts into a position of peril. Such are not the facts in the case at bar for the reason that young Robinson and Woods were observed on the north side of North Street, endeavoring to cross the same at an angle, and to appear to stop on the median. While they were in the process of crossing and particularly while stopped on the median, the defendant observed some type of "horseplay" on their part.
The test for contributory negligence on the part of a youth is not the same as that of an adult. That is to say, the child's age, intelligence, and experience, under the particular circumstances must be considered and they are not expected to react in the same manner as an older and more mature person. White v. Hanover Ins. Co., 201 So.2d 201 (1st La.App., 1967); Cormier v. Sinegal, 180 So.2d 567 (3d La.App., 1965) and Tate v. Hill, 197 So.2d 107 (1st La.App., 1967, writ refused, 1967).
We recently held in Amacker v. Kirby, 224 So.2d 18 (1st La.App., 1969) that an 11 year old cyclist was guilty of contributory negligence when she made an abrupt turn to her right directly into the path of a vehicle approaching from her rear when she knew that the vehicle was behind her.
In Ates v. State Farm Mutual Ins. Co., supra, a 9½ year old cyclist was absolved of contributory negligence when he swerved into the path of an automobile approaching from his rear in the absence of any showing that the youth knew that the automobile was approaching him from the rear.
In the instant matter, there is absolutely no showing that young Woods knew that the Cappo vehicle was approaching him from the west. The record reveals that these young boys were primarily concerned with cars approaching from the east. The fact that their backs were partially turned to Mr. Cappo coupled with his observation of some "horseplay" on their part should have been warning enough to the defendant to expect or be prepared to reasonably cope with some sudden or immature *582 act on the part of either one of these youths.
As to the question of quantum we find that the award of $2,500 is not an abuse of discretion on the part of the trial judge. Medical evidence in the record, consisting of reports of an orthopedic specialist, reveals that Woods sustained a compound fracture of the lower third of the right tibia and fibula. His leg was initially placed in a cast. He was later required to use crutches until such time as he fully recovered. On the last examination the doctor found no evidence of any residual disability and that the fractures had healed and the child fully recovered. Young Woods also testified that he was fully recovered and was no longer bothered with his leg. Under these circumstances, we think the award is proper.
Accordingly, for the above and foregoing reasons the judgment of the trial court is affirmed at appellants' costs.
Affirmed.