GULOTTA, Judge.
This appeal is from a judgment of the trial court dismissing an action for personal injuries brought by plaintiff, Percy Bur-fict, individually, and as the administrator of the estate of his minor daughter, Bernadette. The injuries incurred by the then 13 year old child resulted from an accident between the minor, a pedestrian, and a truck driven by Richard Jackson, an employee of Fred Trosclair, defendant and owner of the truck. Southern General Insurance Company as liability insurer of Trosclair is joined as co-defendant.
In denying recovery, the trial judge determined that the driver of the vehicle was free from negligence and further that upon discovering the danger, neither time nor distance allowed the driver to avoid the accident, and that the proximate cause of the accident was the negligence of the child Bernadette in darting into the street.
The question before this court is whether or not the trial judge committed manifest error in dismissing plaintiff’s action.
The pedestrian-vehicle collision occurred on the afternoon of April 10, 1963, on Louisiana Highway 44 (River Road) near Reserve, Louisiana, when Bernadette Bur-fict, then 13 years of age, was attempting to cross the highway with her older sister, Veronica, in a school-zone area of the highway in close proximity to the Fifth Ward School and Our Lady of Grace School at Reserve.[1] The driver of defendant’s vehicle (hereinafter called the driver) was traveling in the northbound lane of Highway 44. Traffic was heavy in the southbound lane of the highway, immediately adjacent to the levee.
It appears from the testimony that the accident occurred between the hours of 3:15 p. m. and 4:00 p. m. This fact is significant because school-zone speed limits would be in effect at that time. The record discloses that the trial judge found that at the time of the accident, a 40 mile per hour school zone was in effect on State Route La. 44 within the area and that it was not until 1966, subsequent to the date of the accident, that a Director Order placed a maximum 25 mile per hour speed on vehicles in school zones of St. John the Baptist Parish between 7:00-9:00 a. m. and 2:00 p. m. to 4:00 p. m. However, irrespective of this conclusion, the trial judge further determined that Jackson, the truck driver, was traveling at a speed between 20 and 25 m. p. h., a speed below the limit designated for the area.
The record discloses that Jackson testified that shortly before the accident he had stopped the truck in order to allow a school bus to pass at which time he saw the two girls on the top of the levee. After starting the truck, while shifting from third to fourth gear, a rapid sequence of events began. Two automobiles and a green truck were passing him in the southbound or opposite lane of the highway. Immediately thereafter the two girls darted into the path of his vehicle from behind the passing truck at a distance of approximately 35 feet in front of him. His view of the girls was blocked by the oncoming *642 vehicles. Upon seeing defendant’s truck, the older girl, plaintiff’s sister Veronica, screamed and halted her forward motion while Bernadette continued across the northbound lane and walked into the left side of the defendant’s vehicle.
When the girls came into view and upon seeing Bernadette in the path of the truck, the driver immediately swerved to the right in an effort to avoid the impact but was unable to do so.
Bernadette and Veronica testified that their uncle had passed them while they were standing on the shoulder of the southbound lane (the lane opposite Jackson’s) and had blown his horn and waved to them as he passed, after having seen them on the levee side of the road immediately prior to the accident. It was after their uncle’s truck passed that they came into the road. This corroborated Jackson’s testimony.
Though the road crossing was a familiar one to both girls, neither testified that she looked to see if traffic was approaching from the right, i. e., the direction from which Jackson was traveling. Moreover, dust in the area, according to Veronica, prevented her from seeing the actual impact. Obviously, the girls used no caution in attempting to cross the road and, without regard for traffic, darted directly into the path of defendant’s vehicle.
We find no evidence that Jackson was at any time careless or negligent in the operation of his truck at the perilous moment of the accident or prior thereto. The physical facts clearly show that the truck stopped within a short distance (45-50 feet) from impact and the evidence shows that the driver exercised all the caution a reasonable and prudent man would have exercised under such circumstances.
It is unfortunate and distressing that a child suffered injury and that recovery cannot be granted; however, it is obvious from the record that the negligence of Bernadette was the proximate cause of the accident and injury. Jackson did not see the child until she was in his path and could not have seen the girls earlier since his view was obstructed by the truck from behind which they ran. He had no reason to anticipate that the girls would dart out into his path. Therefore, insofar as defendants are concerned, they cannot be liable for an accident which was unavoidable by the driver.
The rule is well established that an automobile driver is not an insurer of the safety of small children. When driving at a lawful and reasonable rate of speed and obeying the rules of the road, a driver will not be held liable-where a child suddenly runs into his path from a concealed position in such a manner that the motorist cannot avoid striking the child. Clearly each case must be considered on the particular circumstances involved. See: Wilson v. Aetna Casualty & Surety Company, 180 So.2d 218 (La.App. 2nd Cir. 1965); Davis v. Guillot, 203 So.2d 919 (La.App. 4th Cir. 1967); Duraso v. Barbo, 215 So.2d 908 (La.App. 1st Cir. 1968); Basham v. Ohio Casualty Insurance Company, 106 So.2d 129 (Orb, La.App. 1958).
We recognize that the rule is different, however, when the motorist sees or should have seen the child near the street. In that situation a motorist is charged with knowledge that children playing or walking along the street may unexpectedly or unpredictably leave a position of safety for one of peril. Under these circumstances a motorist is held to a high degree of care, in fact, the highest degree of care. See: Helgason v. Hartford Insurance Company, 187 So.2d 140 (La.App. 2nd Cir. 1966); Ward v. Southern Bell Telephone & Telegraph Co., 189 So.2d 750 (La.App. 1st Cir. 1966) ; Vander v. New York Fire & Marine Underwriters, Inc., 192 So.2d 635 (La.App. 3rd Cir. 1966); Duraso v. Barbo, supra.
*643 The court in Campo v. Vampran, 183 So.2d 57, 61 (La.App. 1st Cir. 1966) stated:
“ ‘The duty to exercise greater than ordinary care to avoid injury to a child does not become operative or exist in favor of such child until his presence is known or should have been known under the existing facts of the particular case to the operator or driver of a motor vehicle. The motorist, upon discovering the presence of children in his path of travel or in a position where they could become imperiled, is under a duty to exercise the highest degree of care to avoid injury to them. Each case must be adjudged on the facts peculiar to it. No one case is absolutely controlling of another, as few- cases are identical factually. See: Lyles v. Aetna Casualty & Surety Co. et al. (1961) La.App., 136 So.2d 542; Seale v. Checker Cab Company (1962) La.App., 137 So.2d 478; Smith v. Toye Brothers Yellow Cab Co. (1962) La.App., 142 So.2d 59; and Schuster v. Audubon Insurance Co. (1962) La.App., 147 So.2d 226.’ ”
When Jackson first saw the two girls, they were at the top of the levee. His view of the girls thereafter was obstructed by vehicles passing in the opposite lane. He would not, we feel, under any stretch of the imagination, be expected to anticipate that the girls who were positioned upon the levee would meanwhile dart down the levee, look only in one direction for traffic on the highway, run across the southbound lane behind a passing vehicle and appear out of nowhere directly in front of his path in the northbound lane.
We feel that the motorist in the instant case, upon discovering Bernadette in his path of travel, reacted prudently and exercised the highest degree of care possible in swerving to the right of the highway and thereby avoiding more serious injury to the child.
We are, therefore, of the opinion that the findings of the trial judge are correct and that there was no manifest error. Accordingly, the judgment dismissing plaintiff’s suit is affirmed.
Affirmed.

. The girls were at the time returning from an excursion to the seamstress via a path on the levee. Though the accident occurred on a school day, the girls were not in attendance.