BAILES, Judge.
This is an appeal from the judgment of the trial court rejecting plaintiff’s claim for damages for injuries to her 12 year old son, Wayne Collins, whose foot and ankle was run over by a vehicle on which defendant admittedly provided public liability insurance coverage. The trial judge held that the driver of the involved automobile was not guilty of actionable negligence and, accordingly, dismissed plaintiff’s action.
The adverse contentions of the parties involves not so much a dispute over the facts surrounding the accident, but the application of the facts to the jurisprudential interpretations of the degree of care owed by the driver of a vehicle to children in this particular situation. We find the trial judge erred in absolving the driver of the involved vehicle of actionable negligence in the injury of this child.
The accident in which young Wayne Collins was injured occurred at about 5:30 p. m., on July 18, 1969, on the premises of Kingsley House Recreation Center as Miss Linda Suzanna Harang was backing her vehicle from an enclosed parking lot, through a gateway, into Annunciation Street in the City of New Orleans.
As a preface to this discussion it should be stated that from the record it appears Kingsley House Recreation Center, at the time of the accident, operated an organized recreation program. A swimming facility was maintained, and in conjunction therewith swimming and lifesaving instruction was given. Miss Harang was employed as a swimming instructor and as a lifeguard. At 4 p. m. daily the rear gate on Annunciation Street, through which Miss Harang was backing her car, would be opened for admission of children 14 years and older to the swimming pool until the hour of 5 p. m. Children 6 to 13 years of age were admitted at a later time and were required to use the Constance Street gate. Miss Harang worked from 7:30 a. m. until 5 p. m. It appears that parking space was provided for Miss Harang’s automobile within the area enclosed by a 10 to 15 foot high brick wall. Access to the parking area was through the gate in the wall above-described.
Immediately prior to and at the time the Annunciation Street gate was opened preparatory to Miss Harang backing her car from the enclosed area, there had congregated children in the 6 to 13 year age group seeking admittance to the swimming pool. Miss Harang estimated the number in this group to be 25 to 30, and Mrs. Sylvia Turner, a volunteer worker at the Center, estimated the group to number 50 to 75 children. When the gate was opened several of the children made their way inside the enclosure, whereupon Mrs. Turner urged them to go to the front gate (Constance Street gate) for admittance. They were urged to move away from the car in order for Miss Harang to back her vehicle through the gate. Some of the children complied with the instructions, however others were pushing against the car.
Mrs. Turner testified that the injured youth was sitting on the car but got off when instructed to move, however he again sat upon the car and was again told to get off. He obeyed the second instruction and was standing next to the car as it was backed through the gateway. She further testified that the children were shouting, screaming and shoving up against the car, that young Wayne Collins was pushed and that he lost his balance and fell under the side of the car.
*695 In describing the conduct of the children, Mrs. Turner testified as follows:
“Q Were they calm and rational and quite group or was it a rowdy group?
“A Well, I don’t think you could call it rowdy, I think you would say it was generally children about this age wanting to go swimming and asking what time she would be back because the children pretty well liked the lifeguard and they were pretty excited and pushing and so on like that, and we told them they still had to go in the front gate, they could not get in back there.
“Q In this excitement in addition to pushing were they also shouting, laughing and cutting up in general ?
“A Yes, I would say they were like kids will do.”
It appears that at the time the car was being backed through the gateway all of the children were either on the side of the car or outside the gate.
Miss Joan Troncoso, a part-time student and volunteer worker who was a passenger in the car, testified that she got out of the car when the children started jumping on it, and when they had all of the children out of the gate to the outside, she got back in the car and the driver started backing. She testified that when the children were outside of the gate they became angry and were screaming, that there were curse words directed toward Miss Harang and toward her because the children were told they couldn’t come in. This witness stated she was seated at the time of the accident in the right front seat and she was looking to the rear checking traffic on Annunciation Street and she did not see Wayne Collins when he fell.
Miss Linda Harang testified that she told the children to move back, that she was going to get the car out, and that they complied with this instruction at first but they then moved back in close to the car again. She fixed the distance between the children and the car at from one to one and one-half feet.
She said she then got in her car, rolled up the windows, turned on the air conditioner and started backing through the gate. During this backing maneuver, Mrs. Turner was in front of the car. As she was backing, Mrs. Turner hollered for her to stop and that was the first notice she had of the accident. She further stated that as she was backing she was looking for traffic on Annunciation Street.
In his oral reasons for judgment assigned at the conclusion of the trial, the judge a quo stated:
“The evidence is the defendant did stop, not only did she stop, her passenger got out of the car and the plaintiff’s own witness, Sylvia Turner, testified that she was out of the car and that both of them were on these children to get away from the car and that when the situation was clear that she started slowly backing out, and at this time somebody pushed young Collins under the wheel of the car.”
We find no evidence in this record to justify the conclusion of the trial judge that “the situation was clear.” To the contrary the children were at all times prior to and during the movement in close proximity to the car, some pushing, some screaming and hollering. There were three adults present at the time of movement of the vehicle. Miss Harang and Miss Troncoso were inside the car and Mrs. Turner was in front of the car. Most, if not all, of the children were on either side of the car and outside the gate.
The facts of this case militate heavily against absolving the driver of the backing vehicle from actionable negligence. The driver was fully aware of the presence of the children around her vehicle. She testified that she told the children, the number of whom she estimated to be 25 to 30, to move back, and that as she moved backward the children were from one foot to one and one half feet from her car. She *696 was asked this question and gave the following response:
“Q At anytime after you started moving, did you tell the kids to get out of the way?
“A No, I didn’t. I was inside the car and all of the windows were up. Now whether anyone else did or not, I don’t know. Like I said, I couldn’t hear because the windows were up and the air conditioner was on.”
Also, Miss Harang testified she was not looking at the children but was directing her attention to traffic on Annunciation Street even though at the time the children were crowded around her car slapping it with their hands and pushing and shoving within 12 to 18 inches of the car.
The jurisprudence is clear and plain that a driver of a vehicle must exercise the highest degree of care in the presence of children to avoid injury. This is clearly the duty of the operator of a moving vehicle which comes upon the presence of children, and even more convincingly it is the duty of a driver of a parked vehicle which is put in motion while children are crowded about it in an excited mood of pushing, shoving and slapping the car. The conduct of children in their excited, and perhaps untoward, mood does not relieve the driver of the duty to exercise the required degree of care commensurate with the circumstances, but conversely, serves as additional notice to the driver that the highest degree of care is to be exercised.
This is not to say that the driver is an insurer of the safety of children. As the court stated in Duraso v. Barbo, La.App., 215 So.2d 908 (1968), at page 911:
“(1-4) In arriving at our decision, we must bear in mind the rule that an automobile driver is not an insurer of the safety of small children. * * * The rule is different, however, when the motorist sees or should have seen the child near the street. For there a motorist is charged with knowledge that children playing or walking along the street may unexpectedly or unpredictably leave a position of safety for one of danger and peril. Under these circumstances a motorist is held to a high degree of care, or better said, the highest degree of care. * * *
(Emphasis added)
Further, as was stated by the court in Campo v. Vampran, La.App., 183 So.2d 57 (1966), at page 61:
“ * * * The motorist upon discovering the presence of children in his path of travel or in a position where they could become imperiled, is under a duty to exercise the highest degree of care to avoid injury to them. * * *.”
(Emphasis added)
Again, in Woods v. Cappo, La.App., 232 So.2d 578 (1970), on page 581, the court stated:
“(3) Our jurisprudence is very clear to the effect that an extraordinarily high degree of care is imposed on a motorist when he discovers the presence of children in his path of travel or in a position where they could become imperiled. Doyle v. Nelson, 11 So.2d 645 (2d La.App., 1942); Stamps v. Henderson, 25 So.2d 305 (2d La.App., 1946); Haywood v. Fidelity Mutual Ins. Co. of Indianapolis, Inc., 47 So.2d 59 (1st La.App., 1950); Ates v. State Farm Mutual Automobile Ins. Co., 191 So.2d 332 (3rd La.App., 1966); Reynolds v. Transamerica Ins. Co., 221 So.2d 889 (1st La.App., 1969); Pea v. Smith, 224 So.2d 37 (1st La.App., 1969).
“Defendants urge that a driver is not the insurer of the safety of small children and cited Duraso v. Barbo, 215 So.2d 908 (1st La.App., 1968, writ refused 1969) and Collins v. Allstate Ins. Co., 215 So.2d 546 (1st La.App., 1968). These cases are authority for such a rule. However, an examination of the *697 Duraso and Collins cases and the authorities therein cited are limited to those situations where a child suddenly appears from a hidden position and darts into a position of peril. Such are not the facts in the case at bar for the reason that young Robinson and Woods were observed on the north side of North Street, endeavoring to cross the same at an angle, and to appear to stop on the median. While they were in the process of crossing and particularly while stopped on the median, the defendant observed some type of ‘horseplay’ on their part.”
Defendant cites St. Pierre v. Connecticut Fire Insurance Company, La.App., 232 So.2d 808 (1970) and Brown v. Liberty Mutual Insurance Co., 234 La. 860, 101 So.2d 696 (1958), as supportive of its contention that Miss Harang was without fault. These two cases are inapposite on the facts. In both of these cited cases the drivers were unaware of the presence of the child.
In the instant case, the children were in close proximity to the vehicle even before it was moved, on either side and near the rear. There were three adults present, two of whom were inside the vehicle, and the third in front of the backing vehicle. As we appreciate the facts of this case, the existing conduct of the children about this vehicle prior to its movement by the driver was unbroken and undiminished except that the children were not in fact sitting on the car. There was a continuous unbroken sequence of conduct of hollering, screaming, and shoving on the part of the children. Under the circumstances attendant to the movement of this vehicle, the injury to young Wayne Collins was caused by the negligence of Miss Harang and such negligence is proximate in causation and is actionable.
The defendant has pleaded contributory negligence on the part of the injured child. Defendant cites Patterson v. Recreation and Park Commission, La.App., 226 So.2d 211 (1969), and quotes, in its brief, the following statement from page 215 as controlling the application of the plea, viz:
“ * * * (T)he test is whether the particular child, considering his age, background, and inherent intelligence, indulged in a gross disregard of his own safety in the face of known, understood and perceived danger and whether there was intentional exposure to obvious danger in connection with nontechnical and ordinary objects and situations within the capacity of the child to understand and realize."
(Emphasis added)
The application of the plea of contributory negligence as it applies in this case must be made subjectively to this child. Considering the fact this injured child is mentally retarded, certainly to the extent that he qualified for admission to a state school for the mentally retarded, we find the defense of contributory negligence inapplicable on the showing of the defendant. This plea, being an affirmative defense, is not sustained by the proof offered by defendant.
Turning now to a determination of the damages to be awarded, the record shows that this child was treated at the Charity Hospital in New Orleans. The hospital was not served with a copy of the petition of plaintiff on the initiation of this proceeding, nor has the hospital intervened herein. However, there is a reference made in the stipulation of the parties at the beginning of the trial that the charges of the hospital were those shown on invoice No. 137392, dated January 13, 1970, neither the amount was stated nor is the invoice in the record.
The plaintiff has no right to recover for the medical services rendered *698 this child. The services were furnished free of charge to her and there is no obligation owed by her to pay for these services. Therefore, plaintiff’s claim for recovery of medical services furnished by Charity Hospital of New Orleans is denied.
The child was taken to the hospital shortly after the accident where it was found that the skin and underlying tissues were avulsed or torn away and in the treatment of which a skin graft was performed described as being an area measuring 4 cm. by 6 cm. His foot and ankle were placed in a cast. He remained in the hospital until his discharge on July 26, 1969, at which time he was discharged to bed rest at home. The cast remained in place for two months during which time his mother testified he was confined to the bed. After the cast was removed, she stated that Wayne remained on bed rest for two more months.
From the meager description of his medical treatment and hospital stay and post hospital regimen, the absence of any permanent disability, and the testimony of his mother that Wayne was unable for several months to participate in his normal activity and that he suffered a great deal of pain and discomfort during his convalescence, we find that an award of $2,500.00 is fair and adequate.
For the foregoing reasons, the judgment of the trial court is reversed and there is judgment herein in favor of Mrs. Cecile Collins, as natural tutrix of her minor son, Wayne Collins, and against the defendant, Allstate Insurance Company, in the amount of $2,500.00, together with legal interest thereon from date of judicial demand until paid. Defendant-appellee is cast for all costs, both in the trial court and in this court.
Reversed and rendered.
STOULIG, J., dissents with written reasons to follow.