LOTTINGER, Judge.
This is a wrongful death action arising out of a one car accident with a pedestrian. ' The petitioners are Lamar Reynolds and Glenna Faye Reynolds, the father and mother respectively of the young child, Larry Reynolds, who was killed in the accident. The defendants are Benjamin K. Fullington, the driver of a 1966 Plymouth Valiant which struck young Larry, and his liability insurance carrier, Transamerica Insurance Company. Although there were originally other parties to the suits, they have since been released, and they are of no consequence in the present appeal.
The trial below was before a jury, which rendered a verdict in favor of petitioner, Lamar Reynolds, in the amount of $13,-500.00, and in favor of petitioner, Glenna Faye Reynolds in the amount of $13,500.00, and against Benjamin K. Fullington and his insurer, Transamerica Insurance Company, in solido, the judgment, insofar as it concerns the insurance company, being restricted to its policy limits. Judgment was signed by the Lower Court in accordance with the verdict of the jury. The defendants have taken this appeal, a suspensive one.
The questions presented to this Court on this appeal involve strictly those of fact. Quantum is not at issue.
The facts show that young Larry Reynolds, the six year old minor son of petitioners was killed when struck by an eastbound 1966 Plymouth Valiant automobile driven by Benjamin K. Fullington, and insured by Transamerica Insurance Company, at approximately 9:00 o’clock A.M. on April 2, 1966. The accident occurred on what is known as the 40 Arpent Road which runs between Jeanerette and New Iberia. The highway has a black asphalt surface, is 22 feet wide with two lanes of traffic, one going east toward Jeanerette and one going west toward New Iberia. There'are shell shoulders on each side of the road which are approximately each ten feet in width. There is also a shallow grassy ditch approximately 20 to 30 feet wide on the outer side of each of the shell shoulders which went up to the front yard of the houses in the neighborhood. At the time of the accident the Reynolds lived on the south side of the 40 Arpent Road.
Some minutes before the fatal accident occurred, young Larry had crossed to the north shoulder of the 40 Arpent Road and stood in a line with five or six other children to buy some candy at the window of a “traveling store” which had parked on the north shell shoulder of the highway. This “traveling store” was actually a two-tone Chevrolet panel truck which was operated by Mr. Gerald Robertson.
It is contended by petitioners that after making his purchase, young Larry walked around to the front of the traveling store, or to the New Iberia side, and stopped for about ten seconds at the edge of the highway and waited for a westbound vehicle, driven by Mr. Harmon Lewis, approaching from the direction of Jeanerette to pass. Shortly after the westbound vehicle passed, young Larry started across the road at a trot and was struck and killed by an eastbound vehicle approaching from the direction of New Iberia driven by defendant, Benjamin K. Fullington.
The defendants did not plead the special defense of contributory negligence of young Larry. They contend, however, that *891 there was no negligence shown on the part of the defendants, inasmuch as young Larry, according to their contention, ran across the highway directly into' the path of the Fullington vehicle immediately after the westbound vehicle driven by Harmon Lewis had passed. In other words, it is their contention that after the Lewis truck passed the parked traveling store, it passed the Plymouth Valiant operated by defendant, at which time young Larry Reynolds ran across the highway directly into the path of the Plymouth. They contend that Mr. Fullington applied his brakes and skidded but despite efforts he struck the child with the front of his car still in his proper lane of travel and as a result thereof, the child expired without regaining consciousness.
Young Dwain Reynolds, the eleven year old brother of Larry, was an eye witness to the fatal accident involving his brother. Dwain testified that he did not recall whether or not he saw Larry leave the house and go to the traveling store, but he looked out of the front door of the house and saw him buying candy at the window of the traveling store vehicle, which was parked at the entrance of the driveway of the neighbor’s house across the street. He called to his brother to hurry up but did not see any response to indicate that his brother heard him. After Larry finished his purchase he went around to the front of the traveling store and looked both ways, stopped and waited some few seconds, approximately ten, to let a car pass which was coming from Jeanerette and going toward New Iberia. This was apparently the Lewis vehicle. He then waited some three to five seconds during which time he looked again toward Jeanerette and then he started across the highway for home at a slow trot. Dwain then heard a screeching of brakes and saw Larry put up his. hands to ward off the impending impact as it happened. Dwain testified that he had been watching Larry a total of approximately one-half minute before he got hit.
Gerald Robertson, who was driving the traveling store, which was parked on the north shoulder of the highway, testified that on the morning of the accident some six children lined up at the door of his vehicle to buy candy and he remembered Larry Reynolds as being near the end of the line. He testified that after Larry made his purchase, he did not pay any more attention to him as he was waiting on other customers. He became aware of the accident only when he heard the impact of the Fullington vehicle striking young Larry. He did not hear the squealing of brakes.
Mr. Harmon Lewis testified that as he approached the area where the accident was about to occur, he noticed a two-tone Chevrolet vehicle parked on the right shoulder of the road and observed that there were some two or three children on the ditch side of the vehicle lined up at the window as if they were buying something. He didn’t notice any children to the front nor to the rear of the parked vehicle. Shortly after passing the parked vehicle he passed a blue vehicle coming from the opposite direction and then he heard brakes screeching. He pulled to the side of the road and went back to where the accident had occurred.
Mr. Lewis estimated his speed at approximately 40 to 45 miles per hour prior to the accident and there was no other traffic on the road at the time except the vehicle driven by Fullington. When he gave his deposition, he testified that he was approximately 100 yards beyond the stopped vehicle when he passed the eastbound blue car driven by Fullington, and that 'about six seconds had elapsed after he passed the parked car before Fullington’s vehicle passed him.
Benjamin K. Fullington, a defendant herein, testified that at the time of the accident he was driving a new 1966 Plymouth with less than 1,000 miles on it. It was a beautiful spring morning, clear and the sun was shining. He was traveling at *892 approximately 60 miles per hour, when he first noticed Larry Reynolds who was directly in his path and in the front of his vehicle. He estimated the distance to be between 10 and 12 feet and at the time Larry Reynolds was running and looking straight ahead. Fullington admitted that he saw the parked Chevrolet traveling store when he came around the curve, which was several hundred yards up the highway, but did not recall seeing any children around the parked car. He did not see Larry Reynolds until the time he was in the middle of the road and he did not sound his horn. He testified that he applied his brakes immediately when he saw Larry but does not know if he skidded any before the impact.
State Trooper Willie J. Upton investigated the accident. He testified that there were approximately 100 feet of black skid marks all in the eastbound lane, but he was unable to determine whether the skid marks were made before or after the impact.
The evidence, therefore, reflects that young Larry stood at or to the front of the parked car near the edge of the highway for some ten to fifteen seconds waiting for traffic to clear before he attempted to cross. During this time he was in full view of Fullington as he approached the parked traveling store where two or three other children were still standing by purchasing something. The Lewis vehicle must have passed Fullington just shortly before his vehicle struck and killed Larry and it is conceded that at some point in time when the Fullington vehicle going east passed the Lewis vehicle going west there would have been an instantaneous blocking of Fullington’s vision. This, however, certainly did not block Fullington’s vision of the children at the side of the traveling store or of Larry who stood in front of the traveling store as he was approaching. The testimony in the record is that Larry waited some ten seconds for the Lewis vehicle to pass and then an additional three to five seconds after Lewis passed before starting to cross. Certainly, had he been keeping a proper lookout, the defendant would have noticed the children beside the parked vehicle.
Fullington himself testified he was going 60 miles per hour at the time of the impact and that he did not see Larry Reynolds until he was approximately ten to twelve feet from his car which was just immediately prior to the impact. Upon seeing Larry, Fullington stepped on his brake but he didn’t know whether it had time to take hold before the impact.
As Harmon Lewis approached the parked vehicle, it was obvious to him that at least two children were still waiting at the door purchasing something. Fullington was approaching from the other direction and had a view of the same scene. He admits seeing the parked traveling store when he first came around the curve which was approximately one-half to three-fourths of a mile away although he denies seeing the children around the parked vehicle. We do not know why he did not observe young Larry during this lapse of time, however, it is apparent that he failed to see what he should have seen, and consequently he will be held liable in damages.
In Cheramie v. Great American Insurance Company, La.App., 198 So.2d 726, a six year old child ran onto the road from the defendant’s left side and into her left front fender. The defendant was traveling within the speed limit of 35 miles per hour. The Court, noting that the driver did not keep a proper lookout or she would have seen the minor running onto the edge of the pavement, said:
“There can be no question that Mrs. Duet did not keep a proper lookout. Had she done so, she would have seen David Cheramie. It is a well settled principle of our law that a motorist is presumed to have seen what he should have seen. We must, therefore, determine whether, had Mrs. Duet seen what she should have seen, she could have *893 avoided the accident which occurred. We might note, in passing, that the sudden emergency doctrine, which is, to some extent, relied on by defendant, cannot be applied in this situation since Mrs. Duet, in fact, never observed young David.
It is clear from the evidence that there was nothing to obstruct Mrs. Duet’s view. The only estimate of her distance from the point of impact when the boy was running across the road is that of Mr. Cheramie, who testified that she was about 140 or ISO feet away when David, running toward the road, had just reached the edge of the pavement. He also testified that David was 45 feet from him when he was struck.
It would seem apparent that, had Mrs. Duet been keeping a proper lookout, she would have seen, while still 150 feet from the scene, a six year old child just running onto the edge of the pavement. The duty placed on her by the law in such a situation is to slow or stop her vehicle so as to avoid striking him. It is apparent that she had ample time to do so. We find that Mrs. Duet was negligent in failing to keep a proper lookout, and that this negligence was the proximate cause of the accident. There is no doubt that a child of such tender years can not be guilty of contributory negligence, and no such contention is made.”
We believe that the above jurisprudence is particularly applicable to the present case.
The findings of fact by a Trial Judge or jury’s verdict on fact issues dependent on weight attached to witnesses’ testimony will not be disturbed on appeal, unless clearly wrong on the face of the evidence. Norman v. State, La.App., 69 So.2d 120, reversed on other grounds 227 La. 904, 80 So.2d 858. Here we find substantial competent evidence in support of the verdict of the jury, with which we are fully in accord.
For the reasons hereinabove assigned, the judgment of the Lower Court will be affirmed. All costs of this appeal shall be paid by defendants.
Judgment affirmed.