PICKETT, Judge.
This is an action for damages instituted by the parents of an eight and one-half-year-old child who was struck and killed by an automobile owned and driven by Hu-lon N. Martinez. The plaintiffs are Andrew S. Murphy and his wife, Ethel Lobell Murphy, and the defendants are Hulon N. Martinez and the latter’s insurer, State Farm Automobile Insurance Company. After a trial on the merits, the trial court rendered judgment against the defendants, severally and in solido, and in favor of the plaintiffs for the sum of $10,000.00, to each parent for the death of their minor child, plus the sum of $1,493.65 to Andrew S. Murphy for funeral and burial expenses, and $150.00 for expert witness fees, with legal interest from June 18, 1968, until paid. The judgment limited the liability of the State Farm Automobile Insurance Company to $10,000.00 in principal, in accordance with its policy limits. From this *2 judgment the defendants have appealed, and the plaintiffs have answered the appeal asking for an increase in the award for the death of their son.
The accident occurred about 5:00 to 5:30 p. m., on November 25, 1967, on Louisiana Highway No. 444, in Livingston Parish, Louisiana. The highway at that point is a straight, level, black-topped two lane highway running east and west, the hard surfaced portion being 22 feet and 2 inches wide, and the road right of way was 75 feet and 8 inches wide. The accident occurred near the home of Mrs. Joyce Lobell. Exhibit P-6 filed in evidence by the plaintiffs shows that the Lobell home is on the south side of Highway 444. The home of the plaintiffs is on the north side of the highway and 467 feet west of the Lobell home. There is a pasture entrance on the north side of the highway 217 feet west of the Lobell driveway.
Immediately before the accident the plaintiffs’ child, Dale Murphy, had been visiting at the home of Mrs. Joyce Lobell. The evidence shows that Dale Murphy rode his bicycle into the north, or west bound lane of the highway at or near Mrs. Lobell’s home, and that he was struck by an automobile owned and driven by Hulon N. Martinez. The little boy’s body and bicycle was carried by the automobile to approximately midway between the pasture entrance and the driveway of the plaintiffs, and deposited in the west bound traffic lane. The Martinez vehicle was stopped at the plaintiffs’ driveway.
Mr. Martinez testified that he had lived in Livingston Parish all of his life and that he was familiar with the roads in that area. He said that immediately before the accident he was proceeding westerly in the north, or west bound traffic lane of Highway 444, with his bright lights on. He saw the Murphy boy on the bicycle just a split second before his vehicle struck him. The boy was right in front of his left headlight, and was angling toward the west. His vehicle struck the child a little ways west of the Lobell driveway. He said he applied his brakes so that they took effect at about the moment the child was hit, and then he released the brakes and finally came to a complete stop at the Murphy driveway. He said the child fell from his automobile near the center line in the highway. Martinez said he was right at the child when he first saw him, but that he could not say just how many feet the boy was in front of his vehicle. He admitted that immediately after the impact he knew what he had struck. However, he did not explain why he continued on down the highway a distance of some 460 feet after the impact before he stopped his vehicle.
The plaintiffs contend that Mr. Martinez admitted immediately after the accident that he did not see the Murphy child before he hit him. James A. Little, one of the defendants’ witnesses, testified that Martinez, immediately after the accident, grabbed him and said, “I didn’t see him, I didn’t even see him.” Mr. Arthur Little, Jr., said the defendant Martinez told him immediately after the accident that he did not see the child. Trooper Burl Bush, the Highway Patrolman, who investigated the accident, and a witness for the defendants, said the defendant Martinez made the statement to him that he did not see the child, nor did he see the bicycle. Mrs. Joyce Lobell, said she was one of the first persons to arrive where Mr. Martinez was after the accident and that Martinez asked her what he had hit. Mrs. Ethel Lobell Murphy, the mother of the dead child, testified that immediately after the accident, he said to her, “Lady I’m sorry, I didn’t see your child. * * * I didn’t see your child. * * * I thought I had lost my muffler and tailpipe. * * * I’m sorry I didn’t see him.” When questioned on cross examination about whether he had made the foregoing statement to Mrs. Murphy, Mr. Martinez, answered:
“As well as I can remember I don’t recall telling her that. If I did what I *3 meant by that I didn’t see the boy until I had hit him. If I told her that * * *
I was pretty shook up then.”
The evidence shows that there were scraped places in the black-top on the highway that seemed to have been made by the bicycle as it was dragged along the roadway by the defendant’s vehicle. The first scarred place was near the entrance to the Lobell driveway. The evidence convinces us that the point of impact of the Martinez vehicle and the Murphy child and his bicycle was in the west bound traffic lane of the highway, either in front of the Lobell driveway or a little ways west thereof. There is no testimony as to when or where the child entered the highway.
The boy was last seen before the accident in the Lobell driveway. Therefore, he had to travel from the Lobell driveway across the south side of the highway right of way, the east bound traffic lane and to a point at least five feet north of the center line of the highway into the west bound traffic lane thereof.
It is clear from the evidence that Mr. Martinez either did not see the Murphy child before his vehicle struck him, or that if he did see him, it was at a time that he did not, or could not, take evasive action to avoid the accident. The question now remains is whether or not Mr. Martinez was negligent in failing to see the Murphy child travel from the Lobell driveway to the point of impact, and in not bringing his vehicle to a stop, or taking other evasive action to avoid the accident.
Mr. Martinez testified that he was traveling at the rate of 40 to 50 miles per hour at the moment of impact. He met another vehicle some 200 or 300 feet east of the point of impact. When he met the other vehicle he dimmed his lights, but immediately after meeting the other automobile he snapped his lights back on the high beam.
Therefore, according to his evidence from a distance of at least 200 feet east of the point of the accident, he had a clear view of the road ahead, as well as the right of way. There were no other vehicles preceding or meeting him. There was nothing to obscure his vision from the fence corner near the Lobell driveway out to the highway except a utility pole or post which is 3 feet and 4 inches nearer the highway than the fence corner. Mr. Ray Heard, the Supervisor of the Louisiana State Police Crime Laboratory, who was qualified as an expert in accident investigations, testified that he conducted a number of tests at the scene of the accident comparable to the conditions at the time of the accident. He said that based on Exhibit P-1, it is 29 feet from the utility post to the south edge of the pave.ment; and that the paved portion of the road is 22 feet and 2 inches wide. Hence, from the post to the center-line of the highway is 40 feet. If the Martinez car was centered in its west bound lane, and the left front of the vehicle, as testified by Martinez, struck the child, the point of impeact would have been 5 feet north of the center line. Therefore, the little boy would have been at least 45 feet from the utility post at the moment of impact.
Mr. Heard had his nine-year-old son ride a bicycle, comparable to the Murphy bicycle, out of the Lobell driveway at the greatest speed he could attain across the south side of the right of way, the south traffic lane and to the point of the accident. He found the boy could attain a top speed of 8 miles per hour, at which rate it took him 4 seconds to reach the accident point after passing the utility post. Therefore, the Murphy child should have been visible to Mr. Martinez for at least 4 seconds prior to the accident. If Martinez was traveling 50 miles per hour, his speed was 73 feet per second. Hence, 4 seconds before Martinez arrived at the point of impact, he should have been 292 feet east of the place where he said his vehicle hit the little boy. Mr. Heard testified that he made tests on the same road under conditions comparable to the conditions that existed at the time of the accident with an automobile compara *4 ble to the vehicle driven by Martinez at the time of the accident. He found that at a speed of 50 miles per hour, allowing for reaction time, he could and did stop his vehicle within 181 feet. Therefore, deducting 181 feet from 292 feet, we find that Martinez could have stopped his vehicle 110 feet before he reached the point of the accident, if he had seen the Murphy boy when he should have seen him, if he had been keeping a proper lookout. Of course, if Martinez had been driving more slowly, he could have stopped in a shorter distance.
Mr. Heard made other tests as a result of which he found that from 200 feet east of the accident point, the area from the utility pole near the Lobell driveway to the place where the child was struck is clearly visible at night by lights afforded by an automobile such as that driven by Mr. Martinez. In fact he said the entire area for a distance of 400 to 500 feet to the west from 200 feet east of the accident point is clearly visible. Although, there is a slight elevation east of the accident point, the road is relatively flat and the slight rise does not interfere with visibility up to 400 or 500 feet.
It is apparent from the evidence that if Mr. Martinez had been keeping a proper lookout, he could and should have seen the Murphy boy, who was wearing a white T-shirt that reflected light, riding his bicycle across the highway from the Lobell driveway, when he was still at least 200 feet from the place of the accident. It is a well established principle of law that a motorist is presumed to have seen what he should have seen. Mr. Martinez was under a legal duty in such a situation to either stop his vehicle or slow down in order to avoid the accident. We find that Mr. Martinez was negligent in failing to keep a proper lookout, and that his negligence was the proximate cause of the accident.
It is doubtful that a child of such tender years can be guilty of contributory negligence. But if it be conceded that the child was negligent, Mr. Martinez certainly had the last clear chance to avoid the accident. He should have seen the child proceeding on his bicycle toward the road at a time that he could have avoided striking the child had he been keeping a proper lookout. See Jackson v. Cook, 189 La. 860, 181 So. 195. In the case of Cheramie v. Great American Insurance Company, La.App., 198 So.2d 726, this court, when presented with a situation in some respects analogous to the instant case, said:
“It would seem apparent that, had Mrs. Duet been keeping a proper lookout, she would have seen, while still 150 feet from the scene, a six year old child just running onto the edge of the pavement. The duty placed on her by the law in such a situation is to slow or stop her vehicle so as to avoid striking him. It is apparent that she had ample time to do so. We find that Mrs. Duet was negligent in failing to keep a proper lookout, and that this negligence was the proximate cause of the accident. There is no doubt that a child of such tender years can not be guilty of contributory negligence, and no such contention is made.”
The only questions involved in this case are questions of fact. It is the settled jurisprudence of this State that in the absence of manifest error, the findings of fact by the trial judge or jury will not be disturbed on appeal. In the case of Reynolds v. Transamerica Insurance Company et al., 221 So.2d 889, this court said:
“The findings of fact by a Trial Judge or jury’s verdict on fact issues dependent on weight attached to witnesses’ testimony will not be disturbed on appeal, unless clearly wrong on the face of the evidence. Norman v. State, La.App., 69 So.2d 120, reversed on other grounds 227 La. 904, 80 So.2d 858. Here we find substantial competent evidence in support of the verdict of the jury, with -which we are fully in accord.”
*5 In this case we find no such error. The evidence amply supports the finding of the trial judge in which we concur.
By answer to the appeal, the plaintiffs have asked for an increase in the award for damages. We realize that no amount of money will compensate the plaintiffs for the loss of their small son. However, we feel that the awards made by the trial court are in keeping with other awards made by the courts in Louisiana. Furthermore, the trial judge has great discretion in the award of damages. LSA-C. C. Article 1934(3). Tested by this standard and after a careful review of the authorities cited by the plaintiffs-appellees, as well as a careful consideration of the special circumstances of this case, we find no abuse of the trial court’s discretion in the awards made herein.
For the above and foregoing reasons, the judgment of the trial court is affirmed at the appellants’ costs.
Affirmed.