SAMUEL, Judge.
This suit for wrongful death was filed by the parents of a minor child, Lester Bean, who was struck and fatally injured by the right rear wheel of a New Orleans Public Service, Inc. bus operated by its employee, Peter E. Selle. The defendants are New Orleans Public Service and Selle. After a trial on the merits, there was judgment in favor of defendants, dismissing plaintiffs’ suit. Plaintiffs have appealed.
While there is some conflict in the testimony, these basic facts are not in dispute: Between 5:30 and 6 p. m. on June 9, 1966 the bus was proceeding in a northerly direction on Desire Parkway in the City of New Orleans in the normal course of Reroute. Selle stopped the bus at a designated bus stop on the northeasterly corner of the intersection of Desire Parkway and Pleasure Street to discharge passengers. Three or four passengers got off the bus, and while he was at the stop two young male children came into the open front door and asked him for bus transfer stubs. He told them he had none and requested that they step back from the bus. They stepped back a safe distance, allowing him to close the door and pull away from the bus stop. He had proceeded only a few feet and had accelerated to only a speed of not more than 5 miles per hour when he felt the right rear wheel of the bus strike or roll over an object. He stopped and immediately got out to investigate. At this point he saw the child lying face down in the street next to the curb approximately 5 feet on the southern or opposite side of the bus stop sign from him. The child was immediately removed to a hospital by an emergency vehicle. He died the next day.
Plaintiffs make two basic contentions on appeal. First and more important, they argue the proximate cause of the accident was the negligence of Selle in failing to look into the rear view mirror on the right side of his bus before leaving the bus stop in order to be sure the child had not left the position of safety to which he had gone at Selle’s direction. Second, they argue defendants created an attractive nuisance by their custom of giving transfer stubs to children, thereby subjecting them to unwarranted and needless dangers from the busses.
Plaintiffs offered the testimony of police officer Joseph H. Grass, who investigated the accident and took extensive measurements in the course of his investigation. Officer Grass testified: At the point of the accident Desire Parkway and Pleasure Street, which formed the corner where the bus stop was located, were respectively 38 *815 feet 6 inches and 26 feet 10 inches in width. He found the child lying face down in the street with his head facing in a northerly direction toward the rear of the bus, which had stopped slightly north of the center line of Pleasure Street. The child was lying next to the curb 18 feet 3 inches south of the intersection and 4 feet away from the bus stop sign. The bus, which measured 39 feet 6 inches in length by 8 feet 6 inches in width, was stopped in such a position that its right front wheel was 7 feet 2 inches from the Desire Parkway curb and its rear wheel was 5 feet 3 inches from the same curb line. He found no skid marks and estimated the speed of the bus to be 5 miles per hour. Following examination of the right side of the bus as well as the right rear tire, he found no evidence that the child made contact with the side of the bus. He found some evidence indicating the only point of impact between the child and the bus was the right rear tire.[1]
Plaintiffs also introduced the testimony of Alice Johnson Bean, the child’s mother, and Mrs. Carrie Davis. The former did not arrive at the scene until after the occurrence of the accident while Mrs. Davis was driving an automobile in the opposite direction from that of the bus on Desire Parkway and the bus was between her and the child at the time of the accident. Consequently, neither of these witnesses could add anything of significance with regard to how the accident occurred.
The only evidence favorable to the plaintiffs was the testimony of Mrs. Bonnie Jean Joseph, whose testimony was perpetuated and introduced in the form of a deposition. She testified she was standing on the same side of Desire Parkway as the bus stop, across Pleasure Street. (Using officer Grass’ measurements this would place her approximately 47 feet from the scene of the accident.) When she approached the corner on foot some small children were standing by the bus asking for transfer stubs. After passengers got off the bus, the driver closed the door, turned his wheel sharply toward the right and proceeded to bring the bus to the left into Desire Parkway in a wide arc. In the process the bus struck the child, who was leaning against it, knocked him down, and caused him to fall under the wheel.
Mrs. Joseph also testified the bus had stopped parallel to the curb at the bus stop, and that she heard the children asking the driver for transfer stubs. She saw the bus door close, the children step back 2 or 3 steps, and the bus pull away without delay. On the other hand, at another point in her deposition, she said the Bean child was leaning with his hands on the side of the bus about a foot from the back door for “a few seconds” before the bus pulled away. To this extent, Mrs. Joseph’s testimony is contradictory.
The evidence introduced by the defendants is basically the same as that introduced by the plaintiffs, with the exception of certain important particulars. The defendant Selle testified he stopped the bus in a position almost parallel with the curb. He was positive the front of the bus was between 8 and 12 inches from the curb, and he estimated the back of the bus was from 14 to 16 inches from the curb. He stopped to dispatch passengers and did not take on any new passengers. Since only 3 or 4 people got off the bus, he estimated the entire unloading process to take no more than 15 seconds. Selle stated two children, between 5 and 6 years of age, came to his front door and asked him for transfer stubs. He told them he had none and simultaneously told them to step back and waived them back with his hand. They did step back and, when they did, he closed the door and proceeded into Desire Parkway by driving almost straight ahead from the position in which he was stopped. He frankly admitted he did not look in the *816 right rear view mirror before he started off from the bus stop. He explained there was no reason for him to do so because the children had stepped back a considerable distance immediately before he closed the door and immediately before he began his departure from his stopped position. As soon as he closed the door he proceeded on his way without any time interval and he had no reason to contemplate that a child could be under his wheel in such a short interval. There was no sound of any kind to indicate that he had struck a child. The only indication given to him that something was wrong was a feeling, apparently conveyed to him through the steering mechanism, that his back wheel had passed over something. Because busses of the kind which he was driving do not accelerate rapidly, he, like officer Grass, estimated that his speed could not have been more than 5 miles per hour. He further stated that he pulled straight ahead from the curb without a sharp turn in either direction.
Selle’s testimony was substantiated by two passengers in the bus at the time. Mrs. Angie Crawford stated she was seated toward the rear of the bus, but saw the children when they were asking the driver for transfer stubs. She said the driver talked to the children in language suitable for their age, urged them to move back away from the bus, and remained at a full and complete stop until the children moved back. Only then did he close the door and start the bus forward in a straight direction without either hitting the curb or pulling his wheel to either side. She only knew that the child had been struck when she heard a woman scream. The second passenger, Mrs. Shirley Russell, testified Selle stopped parallel to the curb 2 or 3 feet away from it. She did not see the child, and she did not have any indication that the child had been struck by the bus until after the driver had stopped.
The defendants’ final witness was James Wales, Jr., an assistant equipment engineer employed by New Orleans Public Service, Inc. Mr. Wales was called in rebuttal and gave technical testimony predicated on accurate measurements to show that the bus, even at its most extreme rear portion, could not have protruded far enough over the curb to strike the child even if the driver had made a full left turn. His most significant testimony was a statement of the obvious fact that at or near the rear axle of the bus, the point where Mrs. Joseph testified the plaintiffs’ child was leaning, there could be no overhang over the curb for the reason that the rear axle[2] is the pivot point for the entire portion of the bus in front of it, so that each portion of the bus from the center of the rear tire forward would not have pro-j ected over the curb.
Considering the plaintiffs’ attractive nuisance argument first, it is obvious that the doctrine does not apply in the present case because there was nothing inherently dangerous with the attraction of transfer stubs. The law is settled that the attraction itself must contain the danger, and we can see no inherent danger in torn transfer stubs.[3]
With regard to plaintiffs’ second argument, the general rule with regard to the duty imposed upon a driver in an area known to be frequented by children has been stated as follows:
“The duty to exercise greater than ordinary care to avoid injury to a child does not become operative or exist in favor of such child until his presence is known or should have been known under the existing facts of the particular case to the operator or driver of a motor vehicle. The motorist, upon discovering the presence of children in his path of travel or in a position where they could become imperiled, is under a duty to exercise the highest degree of care to avoid injury to them. Each case must *817 be adjudged on the facts peculiar to it. No one case is absolutely controlling of another, as few cases are identical factually.” [4] (emphasis ours).
In the present case, defendant Selle spoke to the children and made them move back from the bus. Only after they had moved some distance backward and were in a position of safety did he then in one motion close the door and immediately start his bus forward. There is no evidence in the record to indicate he delayed the forward movement of his bus after he closed the door for the purpose of allowing traffic on Desire Parkway to pass him or for any other purpose. If he had allowed such a delay to occur, it would then have been foreseeable that one or both of the children could have left the position of safety to which he directed them and come close enough to his bus to sustain injury or death. Such a delay between the closing of the door and starting forward of the bus would then have placed upon him the duty of looking in his rear view mirror or otherwise taking adequate steps to ascertain the safety of the children known to be present.
But on the contrary, the closing of the door and starting of the bus immediately following the backward movement of the children represents a prudent exercise of reasonable precaution to protect the children from harm. By seeing them move backward immediately before he started the bus he neither had reason to anticipate that the child would fall under its wheel nor did he have any means available to him to prevent such an unfortunate occurrence.[5] While there is some conflict in the testimony, the preponderance of the evidence convinces us that the defendant bus driver did everything in his power to protect the safety of plaintiffs’ child. The trial court obviously so concluded and we find no error in that conclusion.
For the foregoing reasons, the judgment appealed from is affirmed.
Affirmed.

. Parenthetically it might be added at this point that this conclusion by the investigating officer was corroborated in part by the autopsy protocol, introduced by plaintiffs, which indicated injuries on the child’s body in the form of tire marks.

. Actually the bottom of the tire immediately below the rear axle.

. See Patterson v. Recreation and Park Commission, La.App., 226 So.2d 211.

. Campo v. Vampran, La.App., 183 So.2d 57, 61.

. These facts distinguish the case now before us from the recent case of Collins v. Allstate Insurance Company, La.App., 264 So.2d 693, where the driver was on grounds designated as a play area for children and she backed her vehicle in spite of the fact that the vehicle was surrounded by children who were screaming and shoving each other.