342 So.2d 715 (1977)
Jake MAUS, Administrator of the Estate of his minor son, Christopher Lee Maus
v.
Vesta M. SCHOUEST.
No. 7741.
Court of Appeal of Louisiana, Fourth Circuit.
January 12, 1977.
Rehearing Denied February 15, 1977.
Writ Refused March 31, 1977.
Daniel E. Becnel, Jr., Robert R. Faucheux, Jr., Reserve, Taylor, Porter, Brooks & Phillips, W. Arthur Abercrombie, Jr., Baton Rouge, for plaintiffs-appellants.
Lemle, Kelleher, Kohlmeyer & Matthews, Vance E. Ellefson, New Orleans, for defendant-appellant.
Wiedemann & Fransen, Lawrence D. Wiedemann, Edmund W. Golden, New Orleans, for defendant-appellee.
*716 Before BOUTALL, SCHOTT and BEER, JJ.
BEER, Judge.
Notwithstanding the multifaceted and complicated pleadings, exhibits and testimony that fill this record, the issues before us on this appeal are uncomplicated and straightforward and deal only with the claim by Mr. Jake Maus in behalf of his minor son, Christopher. Specifically, we must determine the effect of an erroneous jury charge upon the overall validity of a jury verdict which had the ultimate effect of dismissing all of the claims made in this litigation.
Mr. Maus, through learned counsel, contends that the jury was improperly instructed by the trial judge regarding the alleged contributory negligence of Christopher, who was five years of age when he was painfully injured in the accident which forms the basis for this litigation.
That contention is correct. The able trial judge was overzealous in his interpretation and application of the rule set forth in Turner v. Bucher, 308 So.2d 270 (La., 1975), for that opinion contains the following language which we find clear and unequivocal:
"This opinion in no way affects the long line of jurisprudence which holds that certain minor children are incapable of contributory negligence. We do not set the standard of care to which a victim is subject with regard to such a nondiscerning person. Our holding in this case is limited to a situation such as the one before us where the victim is unwarned and unsuspecting of any impending harm from the acts of a child."
Accordingly, we must conclude that the trial court erred in its instruction to the jury regarding the alleged contributory negligence of young Christopher Maus.
However, the effect of our determination that the instruction was incorrect is the basic issue which requires our most careful consideration of this record.
At the conclusion of the trial which had aired the issues of the claims, including those leveled by the driver, Mrs. Schouest, against Christopher's parents for the damages allegedly occasioned to her resulting from her upset following the accident, the jury was asked to respond to a total of twelve interrogatories. These were handwritten and handed to the foreman by the presiding judge. They are as follows:
"Verdict
"We, the jury, find the following verdict:
1.A. Was Vesta M Schouest anegligent? _________
1.B. If so was this negligence a proximate cause of the accident? _________
2.A. Was Christopher Lee Maus acident? _________
2.B. If so was his negligence a proximate cause of the accident? _________
If your answers to each 1A, 1B, 2A and 2B were YES, then do not answer further:
If your answers to both 1A and 1B were YES and your answers to both 2A and 2B were NO then answer Question 3A, B, C & D:
3.A. Did Jake Maus suffer damages from the accident? _________
3.B. If so to what extent for: 1. Past medical expenses $ 2. Future medical expenses $ 3.C. Did Christopher Lee Maus suffer damages from the accident? _________
3.D. If so to what extent for: 1. Past and present pain and suffering § $ 2. Future pain and suffering $ 
If your answers to both 1A and 1B were NO and your answers to both 2A and 2B were YES then answer questions 4A and 4B.
4.A. Did Vesta M. Schoest suffer damages from the accident? (sic)
4.B. If so to what extent for: pain, suffering, mental anguish past and future $ 
 ___________________________________ FOREMAN"
*717 When the judge charged the jury, he referred to the first four interrogatories noted above (1A, 1B, 2A and 2B) and stated:
"When you have answered these four questionsactually if you find you have answered yes, yes, yes, yes, then that's it. You need not answer any further questions. You bring that into the courtroom."
Thereafter, the judge discussed the procedure to be followed "if you have not answered each of these questions yes, if in here there are some no's, . . ."
After the jury had retired to deliberate, the foreman sent a handwritten note into the judge which asked:
"If we vote three yeses and one no how do we fill the bottom part?"
The presiding judge had the jury return to the courtroom bringing the handwritten interrogatories which they had taken with them, and he thereupon reviewed same, making, inter alia, the following comment:
"All four yes as to 1A, 1B, 2A, 2B, that concludes your problem."
The jury again retired and, thereafter, returned with its verdict which was arrived at by answering "yes" to interrogatories 1A, 1B, 2A and 2B and leaving the balance of the interrogatories unanswered.
The court polled the jury, determined that its verdict was unanimous, thanked the jury for a job well done and indicated that the court would write a judgment in conformity with the verdict.
The judgment dismissing the demands of all parties was, thereafter, read, rendered and signed in open court on June 26, 1975.
Able counsel for appellant energetically contends that, on its face, the jury's response to one of the interrogatories propounded at the conclusion of the trial signals a factual finding, on their part, that Mrs. Schouest, the driver of the automobile, was negligent. Thus, there is, he contends, support for his thesis which is as follows: Since Christopher cannot, as a matter of law, be contributorily negligent, and since the jury has concluded that Mrs. Schouest was negligent as evidenced by their answer to the interrogatory dealing with that issue, then, a fortiori, Mrs. Schouest's negligence must be the cause in fact of the painful injury to Christopher.
Counsel for all litigants encourage this court to finally decide the case consistent with the mandate of the Supreme Court generally expressed in Gonzales v. Xerox Corp., 320 So.2d 163 (La., 1975). Essentially, all counsel acknowledge the error in the jury charge and now say to us: In view of this error, which might ordinarily signal the need for remand, we ask, instead, that you decide the case on the record as it is now before you.
We accept the mandate of Gonzales, supra, and the suggestions of counsel. In so doing, we must, necessarily, free ourselves from any persuasions ascribable to the jury's verdict, for we cannot, on one hand, acknowledge the incorrectness of the charge and, yet, on the other hand, accept, without question, certain answers that the jury has given to the interrogatories propounded to them. Furthermore, we are of the view, all factors considered, that the jury had, in fact, resolved the case in such a manner as to call for a judgment dismissing all claims and simply answered the particular interrogatories in a somewhat indiscriminate though well intentioned manner based upon the belief that, in doing so, they would be giving practical effect to their decision. Stated another way, we believe that the jury concluded that there was no legal or factual basis for any of the claims put forward by any of the claimants and also believed that the easiest and most practical way to evidence that ultimate conclusion was by answering "yes" to all of the first four interrogatories propounded to them even if such answers were not definitive of their specific determinations.
Notwithstanding certain of the answers to the interrogatories, we believe that the record unequivocally supports a finding *718 that Mrs. Schouest neither saw nor should have seen Christopher at any time until he was located under her automobile.
The great weight of uncontradicted testimony adduced at trial preponderates toward the following findings of fact: During the late afternoon of Sunday, October 7, 1973, Mrs. Vesta Schouest was driving her automobile in a northerly direction in the three hundred block of West Eighth Street, a two-way street in a residential section of Reserve, Louisiana. Her sister, Mrs. Ella Aldridge, was accompanying her. Although dusk was near at hand, there was ample daylight and good visibility for driving purposes. Mrs. Schouest testified that prior to the accident, she was looking for the home of some friends. As she proceeded on West Eighth Street, she encountered a group of adults standing next to a parked red Chevrolet sedan which protruded partially into Mrs. Schouest's lane of traffic directly in front of the home of Mark Keller, owner of the parked car. As she approached the sedan, Mrs. Schouest slowed her vehicle, honked the horn, and proceeded to circumvent the parked sedan by briefly entering the opposite (clear) lane of traffic. After completing her passing maneuver, Mrs. Schouest returned to the righthand lane of traffic and proceeded at a speed of approximately 5 miles per hour.
A redwood fence is visibly situated on the property line between the contiguous lots belonging to Carol Keller and Mark Keller respectively. The lots front on West Eighth Street. From the perspective of a person driving north on West Eighth Street, this fence is on the driver's right. The fence commences eight feet from the street and stands four feet high although its height increases and levels off at six feet as it extends further away from the street and between the lots separated by it.[1] As the Schouest vehicle passed the fence and a driveway leading to the Carol Keller residence (which was approximately fifty feet past Mark Keller's parked red sedan), both Mrs. Schouest and Mrs. Aldridge heard a "thump," on the right side of the car. Prior to hearing the "thump," neither woman had seen any children in the vicinity. Thereafter, Mrs. Schouest's vehicle traveled about nine or ten feet before it was brought to a standstill, directly in front of Keller's house. Mrs. Aldridge got out and discovered Christopher Maus pinned under the car. Mrs. Katherine Keller, the wife of Carol Keller, lives directly across the street from Jake Maus. Although not a witness to the actual event, she testified that she was inside her home at the time of the accident and, when she heard her dogs barking, went outside. She did not see anyone else look underneath the car, did so herself and discovered Christopher Maus. After obtaining a jack from her own car, Mrs. Keller assisted in extricating young Christopher Maus from underneath the Schouest vehicle. Two state troopers arrived and, with the use of Mrs. Keller's jack, also assisted in dislodging Christopher Maus from underneath the vehicle. Thereafter, the child was placed in the trooper's car. On route to the hospital, the trooper's car was intercepted by an ambulance. Young Maus was transferred to the ambulance, after which he was taken to East Jefferson Hospital where it was diagnosed that his injuries included multiple fractures and burns on the left side of the cheek and left arm, the burns requiring skin grafts resulting in permanent scarring to the face and hand. Reconstructive surgery was necessitated.
Although both counsel refer us to Kelly v. Messina, 318 So.2d 74 (La.App.4th Cir., 1975), that case is factually distinguishable from the case at bar insofar as it involved a ten year old bicyclist struck from the rear by a vehicle driven by a motorist who actually observed children in the road prior to the accident.
We are more influenced by Campo v. Vampran, 183 So.2d 57 (La.App.1st Cir., 1966), writs ref. 249 La. 64,184 So.2d 735, in which the defendant motorist was proceeding *719 at less than twenty miles per hour on a residential street, keeping a proper and careful lookout ahead, with no prior warning or notice that a child of less than three years of age was on the sidewalk since his view of the child was obscured by the height and size of a parked Buick automobile. The child entered the street from a position near the Buick. The court noted that the duty to exercise greater than ordinary care to avoid injury to a child only becomes operative when the presence is known or should have been known to the motorist. Also note Danos v. Central National Insurance Company of Omaha, 211 So.2d 106 (La.App.1st Cir., 1968), where the facts and conclusions of law were almost identical. Very recently, in Raphile v. Alexander, 315 So.2d 836 (La.App.4th Cir., 1975), we observed:
"The degree of care a motorist should exercise when confronted with a child darting in front of his vehicle is succinctly stated in Layfield v. Bourgeois, 142 So.2d 799, 801 (La.App.3d Cir., 1962):
"There is no dispute as to the law, it being well established in our jurisprudence that a motorist who sees or should see children near the roadside, must exercise a high degree of care in view of the propensity of young children to dart or run into the street, heedless of their own safety. * * * On the other hand, a motorist is not an insurer of the safety of children playing near the street. If the motorist is proceeding at a lawful and reasonable speed and obeying all of the rules of the road as to proper lookout etc. he will not be held liable where a child suddenly darts or runs into his path from a concealed position in such a manner that the motorist is unable to avoid striking the child. * * *"
"The courts have repeatedly emphasized the fact that the duty to exercise greater than ordinary care to avoid injury to a child does not become operative or exist in favor of such child until his presence is known or should have been known under the existing facts of the particular case to the operator or driver of the motor vehicle. LeBoeuf v. McCoy, 273 So.2d 580 (La.App.1st Cir., 1973); Chappetta v. Jones, 237 So.2d 435 (La.App.4th Cir., 1970); Ward v. Southern Bell Telephone & Telegraph Co., 189 So.2d 750 (La. App.1st Cir., 1966); Campo v. Vampran, 183 So.2d 57 (La.App.1st Cir., 1966)."
We believe that the record fully supports Mrs. Schouest's testimony regarding her slow rate of speed, the physical configuration of the neighborhood, including the location of the fence which divided the Keller properties, the presence of the parked red Chevrolet, and, most important of all, the lack of discernible presence of Christopher.
Just prior to the accident, young Christopher had been playing with two of the Keller children, Naomi and Myra Elizabeth, at the Carol Keller residence. The two little girls, several years older than Christopher, had decided to walk to the drugstore and had departed shortly prior to the accident, leaving Christopher behind.
Whether these actions precipitated some responsive action on Christopher's part can only be conjectured. The record does, however, reveal that the two little girls were some distance away from the Keller house when the accident happened, for they came back after the accident occurred. There is nothing in the record to indicate that their presence at some point substantially removed from the point of impact constituted a signal to Mrs. Schouest that small children were playing in the neighborhood for they were past the parked red Chevrolet moving in the opposite direction from that of Mrs. Schouest's car.
We are convinced that Mrs. Schouest was not negligent and that the accident, insofar as her actions were concerned, was unavoidable.
Accordingly, we are of the view that the judgment of the 29th Judicial District Court is substantially correct, and it is, therefore, in all respects, affirmed. Each party to this appeal is to bear its own costs.
AFFIRMED
*720 SCHOTT, Judge, assigning reasons for voting to grant plaintiff-appellant's application for rehearing.
In answer to special interrogatories the jury found that Mrs. Schouest was negligent and her negligence was a proximate cause of the accident. Recovery was denied to plaintiff because of the erroneous inclusion of the issue of Christopher's contributory negligence.
I would like to reconsider our rationalization of the verdict as an attempt by the jury to reach the result of dismissing all claims. If this rationalization were repudiated I would then like to reconsider the jury findings regarding Mrs. Schouest's negligence pursuant to the guidelines set forth in Canter v. Koehring, 283 So.2d 716 (La.1973), i.e., I would determine whether there is evidence in the record to furnish the jury with a reasonable basis for their findings.
I am influenced to vote for the rehearing because I am now of the opinion that the record does contain such evidence. Mrs. Schouest was going only five miles per hour. The investigating officer gave testimony which supports an inference that she failed to see the child when she should have in time to avoid striking him.
I would like to provide plaintiff with a rehearing and have all parties address themselves to these issues.
NOTES
[1] Mr. Maus describes Christopher at the time of the accident as being ". . . about four feet tall."